545 P.2d 76

John **SHAFFER**, Appellant,

v.

Thomas **ALLT**, as Mayor of the City of Yuma, the City Council of the City of Yuma, the City of Yuma, a Municipal Corporation, Appellees.

John **SHAFFER**, Appellant,

v.

**ARIZONA STATE LIQUOR BOARD**, and the City of Yuma, a Municipal Corporation, Appellees.

Nos. I CA–CIV 2716, I CA–CIV 2777.

Court of Appeals of Arizona, Division 1, Department B.

Jan. 22, 1976.

Rehearing Denied March 2, 1976.

Review Denied March 30, 1976.

---

Brandt & Engler, by Don B. Engler, Yuma, for appellant.

Douglas S. Stanley, City Atty., Yuma, for appellees Mayor and City Council of City of Yuma and City of Yuma.

Bruce E. Babbitt, Atty. Gen., by James Michael Low, Asst. Atty. Gen., Phoenix, for appellee Arizona State Liquor Board.

James D. Webb, City Atty., by Enos P. Schaffer, Deputy City Atty., Tucson, amicus curiae.

## OPINION

JACOBSON, Presiding Judge.

This appeal presents the question of whether the City of Yuma may engage in the business of selling alcoholic beverages at a city-owned recreation complex.

In December, 1973, the City Council of the City of Yuma adopted Ordinance No. 1344 authorizing the city to purchase an Arizona liquor license.[1] Appellant, John Shaffer, a resident taxpayer of Yuma, filed a Special Action against Thomas Allt as Mayor of the City of Yuma, the Yuma City Council, and the City of Yuma, contending that the ordinance was invalid as an excess of those defendants' legal authority and sought an injunction restraining defendants from taking action to purchase a liquor license during the pendency of the proceedings. After hearing argument on a motion to dismiss filed by the City, the Superior Court entered an order dismissing the complaint and gave judgment for the defendants.

Following the defeat of his special action in Superior Court, Shaffer filed a Special Action on the same grounds in the Supreme Court. That court declined to accept jurisdiction of the matter.

In addition to the proceedings described above, Shaffer appealed a decision of the Arizona State Liquor Board approving a transfer of a liquor license to the City of Yuma. The Superior Court affirmed the decision of the Board.

Pursuant to an order of this court, the actions on appeal against the City and the state liquor board have been consolidated. Appellant formulates two issues for decision. First, whether the City of Yuma has authority to hold a liquor license and engage in the selling of alcoholic beverages; and second, whether the Arizona State Liquor Board is statutorily authorized to transfer a liquor license to a municipal corporation.

Yuma is a charter city, organized in accordance with the constitutional grant, found in article 13, § 2 of the Arizona Constitution, of "home rule" to qualifying municipal corporations.

Turning to the first issue presented, that is, the authority (power) of the city of Yuma to hold a liquor license and engage in the business of selling alcoholic beverages, we must start with the scope of the City's power as a charter city. As a charter city, Yuma may exercise all the powers authorized by its charter, insofar as those powers are consistent with the Arizona Constitution and do not conflict with state legislative enactments which have appropriated the field in an area of general statewide concern. *See*, A.R.S. § 9–284(B); *Gardenhire v. State*, 26 Ariz. 14,

---

1. That action of the City Council provided for:

"AN ORDINANCE OF THE CITY OF YUMA, ARIZONA PROVIDING FOR THE PURCHASE BY SUCH CITY OF A NUMBER SIX (6) ARIZONA STATE LIQUOR LICENSE, SUBJECT TO APPROVAL BY THE ARIZONA STATE LIQUOR DEPARTMENT OF APPLICATION NO. 465 TO BE AMENDED; SAID LIQUOR LICENSE TO BE USED BY SAID CITY, THROUGH ITS AGENT, AT THE YUMA CIVIC AND CONVENTION CENTER; AUTHORIZING AND DIRECTING THE ADVERTISING FOR SEALED PROPOSAL THEREFOR; UPON ACCEPTANCE THEREOF AUTHORIZING AND DIRECTING THE EXECUTION OF ALL NECESSARY CONTRACTS THEREFOR; AND DECLARING AN EMERGENCY."

221 P. 228 (1923); *Buntman v. City of Phoenix,* 32 Ariz. 18, 255 P. 490 (1927); *Clayton v. State,* 38 Ariz. 135, 297 P. 1037 (1931); *City of Tucson v. Walker,* 60 Ariz. 232, 135 P.2d 223 (1943); *Shropshire v. Peery,* 60 Ariz. 530, 141 P.2d 852 (1943); *City of Tucson v. Tucson Sunshine Climate Club,* 64 Ariz. 1, 164 P.2d 598 (1945); *Arizona Fence Contractors Ass'n v. City of Phoenix Advisory and Appeals Board,* 7 Ariz.App. 129, 436 P.2d 641 (1968).

Our inquiry then concerning whether the City of Yuma may engage in selling alcoholic beverages at its baseball, golf and civic center complex is a three-pronged one: (1) Is the selling of alcoholic beverages by a municipality consistent with the Arizona Constitution; (2) Are there state statutes which would prohibit a municipality from selling alcoholic beverages; and (3) Does the charter of the City of Yuma expressly grant or fairly imply a grant of power to engage in the sale of alcoholic beverages?

■ Two provisions of the Arizona Constitution and cases construing these provisions bear upon the question of what types of business a municipal corporation may engage in. Article 13, § 5 of the Arizona Constitution provides:

" § 5. Right of municipal corporation to engage in business or enterprise

"Section 5. Every municipal corporation within this State shall have the right to engage in any business or enterprise which may be engaged in by a person, firm, or corporation by virtue of a franchise from said municipal corporation."

And, Article 2, § 34 of the Constitution states:

" § 34. Industrial pursuits by state and municipal corporations

"Section 34. The State of Arizona and each municipal corporation within the State of Arizona shall have the right to engage in industrial pursuits. Added election Nov. 5, 1912, eff. Dec. 5, 1912."

While these provisions are not "self-executing", a charter provision can supply the necessary legislation required to put the provisions into effect. *Buntman v. City of Phoenix,* 32 Ariz. 18, 255 P. 490 (1927). The precise question of whether, reading these provisions together, a municipal corporation is limited in its business activities to those in which it could grant a franchise, was answered by the Arizona Supreme Court in *Crandall v. Town of Safford,* 47 Ariz. 402, 56 P.2d 660 (1936). The Court stated:

"It should be kept in mind that section 34, art. 2, approved by the people in November, 1912, amended the Constitution and that it enlarged the powers conferred by section 5 of article 13, *supra.* And while it is true that the Legislature has on three separate occasions, namely, chapter 11, Laws of the First Special Session of 1912, chapter 31, Session Laws of 1921, and chapter 77, Session Laws of 1933, enacted legislation providing that municipal corporations may engage in any business an individual may follow 'by virtue of a franchise from such municipal corporation,' yet in doing so it seems plain that it overlooked the fact that section 34, art. 2, gives municipalities the right to engage in industrial pursuits, without specifying any limitation whatever as to kind or character. Realizing this, it was held in effect in *City of Tombstone v. Macia,* 30 Ariz. 218, 245 P. 677, 682, 46 A.L.R. 828, that, following the adoption of section 34, *supra, municipalities were no longer confined in engaging in business, to those particular enterprises for which a municipality might grant a franchise to an individual.*" (emphasis added) 47 Ariz. at 409, 56 P.2d at 662–63.

*Accord, City of Phoenix v. Wright,* 52 Ariz. 227, 80 P.2d 390 (1938); *City of Tucson v. Polar Water Co.,* 76 Ariz. 126, 259 P.2d 561 (1953).

■ Thus it appears that the City of Yuma may, consistent with the Arizona Constitution, engage in the business of sell-

ing alcoholic beverages at the city recreation complex regardless of whether the city is empowered to grant, or need grant a "franchise" to a private entity to engage in that activity.[2] This answer does not end our constitutional inquiry, however. A municipal corporation, even in the exercise of its proprietary powers, must exercise those powers for a public purpose. *City of Tombstone v. Macia,* 30 Ariz. 218, 245 P. 677 (1926); *City of Glendale v. White,* 67 Ariz. 231, 194 P.2d 435 (1948); 3 Yokley Municipal Corporations, § 54 at 107 (1958). This is in accord with the fundamental principle that public funds may not be used for private gain. *City of Phoenix v. Michael,* 61 Ariz. 238, 148 P.2d 353 (1944). *See,* article 9, § 1 of the Arizona Constitution prohibiting the levying and collecting of taxes for other than public purposes.

Other than the strict prohibition against municipal activity for purely private gain, the concept of "public purpose" is not capable of rigid definition, but must be defined in accordance with the circumstances and the times. The Arizona Supreme Court has stated:

> "The question of what is a public purpose is a changing question, changing to suit industrial inventions and developments and to meet new social conditions. Law is not a fixed and rigid system but develops, a living thing, as the industrial and social elements which form it make their impelling growth." *City of Tombstone v. Macia,* 30 Ariz. 218, 226, 245 P. 677, 680 (1926).

Appropriation of monies for a civic center has been ackowledged to be for a public purpose. *City of Phoenix v. Phoenix Civic Auditorium and Convention Center Ass'n.,* 99 Ariz. 270, 408 P.2d 818 (1965). The fact that a municipal corporation may make a profit from engaging in a proprietary activity does not negate the underly-

ing public purpose of the enterprise. *City of Tombstone v. Macia, supra.* The encouragement of immigration, new industries, and investment in the city is a valid public purpose for the exercise of a municipal corporation's proprietary powers. As was stated in *City of Tucson v. Tucson Sunshine Climate Club, supra:*

> "The extent to which a municipality may desire to go in encouraging immigration, new industries and investment within its boundaries is something that its inhabitants should have the power to decide. The people of one city may be perfectly satisfied with conditions as they are, while those of another municipality may wish to make every effort to promote and expand the population, activities and business of the city. It is unquestionably a purely municipal affair." 64 Ariz. at 8, 164 P.2d at 602.

If, in the opinion of the citizens of the City of Yuma as expressed in their charter, the selling of alcoholic beverages at the recreation complex serves the convenience of the city's inhabitants as well as promotes the tourist industry with concomitant revenues to the city, this court will not substitute its judgment for that of the city's residents and their elected representatives. *City of Tucson v. Sims,* 39 Ariz. 168, 4 P.2d 673 (1931); *Sulphur Springs Val. Elect. Coop. v. City of Tombstone,* 99 Ariz. 110, 407 P.2d 76 (1965). As stated in *City of Glendale v. White, supra:*

> "The question as to whether the performance of an act or the accomplishment of a specific purpose constitutes a 'public purpose,' and the method by which such action is to be performed or purpose accomplished, rests in the judgment of the city council, and the judicial branch will not assume to substitute its judgment for that of the governing body unless the latter's exercise of judgment or discretion 'is shown to have been un-

---

**2.** We do not reach the question of whether a lease by a municipal corporation to a private entity of space at a city-owned convention center for the purpose of selling alcohlic beverages constitutes the granting of a "franchise".

questionably abused.' . . ." 67 Ariz. at 237, 194 P.2d at 439.

We conclude that the ordinance authorizing, in effect, the City of Yuma to engage in the selling of alcoholic beverages at its recreation complex is not inconsistent with the Arizona Constitution.

We now turn to a determination of whether Yuma's ordinance authorizing the purchase of a liquor license and thus engaging in the selling of alcoholic beverages is in conflict with state statutes. As previously indicated, the power of a charter city is subject to state regulation when the power sought to be exercised is "of statewide application and interest." *City of Tucson v. Arizona Alpha of Sigma Alpha Epsilon,* 67 Ariz. 330, 335, 195 P.2d 562 (1948). However, "a home rule city deriving its power from the Constitution is independent of the state Legislature as to all subjects of strictly local municipal concern." *City of Tucson v. Tucson Sunshine Climate Club, supra,* 64 Ariz. at 8–9, 164 P.2d at 602. There is no doubt that in creating the Department of Liquor Licenses and Control (Title 4, A.R.S.), the legislature intended to exercise statewide control over traffic in intoxicating liquor. *Mayor and Common Council of the City of Prescott v. Randall,* 67 Ariz. 369, 196 P.2d 477 (1948). However, the power to *control traffic* in alcoholic beverages is not inconsistent with a decision of a city to *engage in the selling* of alcoholic beverages consistent with that state control. Such a decision, in our opinion, is a matter of "municipal concern" in which the state may not interfere.[3]

We therefore hold that the Yuma ordinance allowing that city to purchase a liquor license is not inconsistent with any general law of the state.

We now reach the third tine of our inquiry: Does the Yuma charter contain authority for the enactment of the ordinance under consideration? We have previously discussed the constitutional and statutory limitations imposed upon charter cities. One additional limitation is present, that is, municipalities, be they charter or otherwise, have no implied powers, except such as may be fairly implied from expressed powers. *City of Scottsdale v. Superior Court,* 103 Ariz. 204, 439 P.2d 290 (1968); *Kendall v. Malcolm,* 98 Ariz. 329, 404 P.2d 414 (1965).

Since the City of Yuma admits that there is no specific charter provision expressly authorizing it to engage in the business of selling alcoholic beverages, it must point to a specific charter provision from which this power may be fairly implied. An implied power has been defined as one whose function it is to aid in carrying into effect a power expressly granted. *City of Flagstaff v. Associated Dairy Products Co.,* 75 Ariz. 254, 255 P.2d 191 (1953).

Article III, § 5 of the Yuma City Charter authorizes the city "to . . . own and operate . . . places of recreation." Article III, § 72 of the charter further provides for "the acquisition, construction, maintenance and promotion of public facilities to consist of a baseball complex, an 18-hole golf course, and a multi-purpose community center building, and *necessary and appropriate service and administrative facilities appurtenant thereto.*" (emphasis added) In our opinion, by virtue of § 72, the city council is vested with the discretion to determine what service facilities are "necessary and appropriate" to the described recreation complex. The limitation "necessary and appropriate" together with the description of the complex provides sufficient guidelines for the exercise of that discretion by the council.

As stated previously in this opinion, this court will not interfere with the council's reasonable exercise of that discretion, unless that discretion "is shown to have been unquestionably abused." *City of Glendale*

---

3. We note that appellant has not pointed out to us, nor have we found, a state statute expressly prohibiting a municipality from engaging in the business of selling liquor.

*v. White, supra,* 67 Ariz. at 237, 194 P.2d at 439. *See also, City of Tucson v. Sims, supra.* This court cannot say that a facility serving alcoholic beverages may not reasonably be considered a "necessary and appropriate service facility appurtenant" to a recreation complex which includes an 18-hole golf course. As was stated in *City of Tombstone v. Macia, supra*:

> "Municipal corporations are not limited to provide for the material necessities of their citizens. Under legislative authority they may minister to their comfort, health, pleasure, or education." 30 Ariz. at 227, 245 P. at 681.

It follows that the authorization to purchase a liquor license flows from the authority to provide bar facilities at the recreation complex. Accordingly, we find Yuma City Ordinance No. 1344, authorizing the purchase of a liquor license to be valid under the Charter of the City of Yuma.

There remains to be answered appellant's final contention regarding the authority of the Arizona Liquor Board to issue a liquor license to a municipal corporation.

Appellant's argument is that in order to qualify as a spirituous liquor licensee under A.R.S. § 4–201(A), the licensee must either be a bona fide resident of the state, a partnership, each of the partners being bona fide residents of the state, or a corporation, and if a corporation, "it shall be a domestic corporation or a foreign corporation which has qualified to do business in this state." The appellant then cites A.R.S. § 10–102 (1956), which provides in part as follows:

"A. Corporations are either public or private.

\* \* \* \* \* \*

"B. Corporations are either domestic or foreign.

1. A domestic corporation is a corporation organized under the laws of this state.

2. A foreign corporation includes every other corporation."

Appellant then argues since A.R.S. § 10–102 distinguishes in section A, between public and private corporations and an Arizona municipal corporation could not be a foreign corporation under subsection B of that statute, subsection B must only apply to definitions of private corporations. He then argues that since A.R.S. § 4–202(A) refers to "domestic or foreign corporations" this section likewise applies only to private corporations and therefore a municipal corporation cannot be a licensee. We believe this argument to be illogical.

First, A.R.S. § 4–201(A) (1974) provides:

"A person desiring a license to . . . sell or deal in spirituous liquors shall make application therefor to the board . . . ."

"Person" is defined by A.R.S. § 4–101(12) to include a "partnership, association, company or corporation, as well as a natural person." If appellant's argument is correct that a municipal corporation does not fall within the definition of "corporation", then a municipal corporation would not fall within the definition of a "person" required to have a license to "sell or deal in spirituous liquors" and therefore could engage in that business without a license from the state. Such a construction is contrary to the obvious legislative intent to place the selling of spirituous liquors under control of the State Liquor Board regardless of the vendor. Moreover, it is contrary to the general rule that when a municipal corporation engages in business activities pursuant to its proprietary function, it is subject to the same rules and regulations which are imposed upon a private entity engaged in a like business. *Sumid v. City of Prescott,* 27 Ariz. 111, 230 P. 1103 (1924).

Second, and more importantly, we do not consider the definitions contained in A.R.S. § 10–102(B) to apply solely to private corporations. In our opinion, a municipal corporation is "organized under the laws

of this state" so as to fall within the definition of a "domestic corporation" under that section.

We therefore hold that a municipal corporation falls within the definition of a "corporation" authorized to apply for and hold a liquor license under Title 4, A.R.S. As such, the State Liquor Board is authorized to issue the city a license and the city is subject to regulation by that Board to the same extent as a private corporation dealing in spirituous liquors.

Accordingly, we affirm the decision of the Superior Court dismissing appellant's complaint against the mayor, city council, and City of Yuma; and we affirm the Superior Court's affirmance of the decision of the Arizona State Liquor Board approving the transfer of a liquor license to the City of Yuma.

HAIRE, C. J., Division 1, and EUBANK, J., concurring.