47 P.3d 672

Pat MCMANN and Joan McMann, husband and wife, dba McMann's Roadrunner, Plaintiffs/Appellees,

v.

CITY OF TUCSON, a municipal corporation, Defendant/Appellant.

Pat McMann and Joan McMann, husband and wife, dba McMann's Roadrunner, Plaintiffs/Appellants,

v.

City of Tucson, a municipal corporation, Defendant/Appellee.

Nos. 2 CA–CV 2001–0082,
2 CA–CV 2001–0163.

Court of Appeals of Arizona,
Division 2, Department B.

May 30, 2002.

Rusing & Lopez, P.L.L.C., by Michael J. Rusing and Sean E. Brearcliffe, Tucson, for Pat and Joan McMann.

Gabroy, Rollman & Bossé, P.C., by Richard M. Rollman and Richard A. Brown, Michael D. House, Tucson City Attorney, by David L. Deibel, Tucson, for City of Tucson.

## OPINION

HOWARD, Presiding Judge.

¶ 1 These consolidated appeals arise from the trial courts' rulings on Pat and Joan

McMann's declaratory judgment actions in cause numbers C–20011696 (first case) and C–20012065 (second case). In both cases, the McManns sought a declaration that A.R.S. § 13–3108 preempts the City of Tucson's "ordinance"[1] requiring instant background checks for prospective gun purchasers during gun shows held at the Tucson Convention Center (TCC). The trial court dismissed the first case without prejudice, concluding that the McManns had failed to present a justiciable case or controversy. The McManns challenge that ruling. In the second case, the trial court declared that § 13–3108 preempts the City's ordinance, granted the McManns' request to enjoin the City from enforcing the ordinance, and awarded attorney's fees to the McManns. The City challenges that ruling. We dismiss as moot the McManns' appeal in the first case. And, because we do not discern a clear legislative intent to preempt the City's ordinance, we vacate the trial court's ruling in the second case. We deny the City's request for fees.

## BACKGROUND

¶ 2 In 2000, the legislature enacted § 13–3108 in its present form and set forth the following statement of its intent:

It is the intent of the legislature to clarify existing law relating to the state's preemption of firearms regulation in this state. Firearms regulation is of statewide concern. Therefore, the legislature intends to limit the ability of any political subdivision of this state to regulate firearms and ammunition. This act applies to any ordinance enacted before or after the effective date of this act.

2000 Ariz.Sess.Laws, ch. 376, § 4. Section 13–3108 states in pertinent part:

A. Except as provided in subsection C of this section, a political subdivision of this state shall not enact any ordinance, rule or tax relating to the transportation, possession, carrying, sale or use of firearms or ammunition or any firearms or ammunition components in this state.

Subsection B prevents a political subdivision from enacting local licensing or registration requirements and from prohibiting firearms sales and transfers. Subsection C enumerates certain exceptions to the general prohibition on local firearm regulations.

¶ 3 In February 2001, the City, a charter city, voted to condition the use of its commercial property, specifically the TCC,[2] for gun shows on the show's promoter's agreement to require instant background checks for prospective gun purchasers. The City understood that § 13–3108 prevented it from directly regulating the sale of firearms within its city limits, but reasoned that, as the proprietor of the TCC, it could, nonetheless, impose restrictions on the TCC's use for gun shows.

¶ 4 In March 2001, the McManns, who had promoted gun shows in the TCC for several years, paid a deposit to the City to reserve the TCC for a gun show in June. After the City presented the McManns with a use permit that included the background check requirement, the McManns filed the first case. The trial court concluded that, because the McManns had not executed the use permit, there was no justiciable controversy to resolve. Accordingly, the trial court dismissed the first case. Thereafter, the McManns executed the use permit and then filed the second case, claiming the City's action was preempted by § 13–3108. The trial court agreed, enjoined the City from enforcing the background check requirement, and subsequently awarded the McManns their attorney's fees. The McManns timely appealed from the dismissal of the first case, and the City appealed from both the judgment and fee award in the second.

---

1. In the second case, the City did not contend below or here that its action was not an "ordinance" or "rule" within the meaning of A.R.S § 13–3108. In the first case, the City does contend that its action was not an ordinance and that, therefore, declaratory judgment relief was properly denied. That issue is not determinative of our resolution in the first case, and we need not decide it. Accordingly, we refer to the City's action as an ordinance.

2. We accept the undisputed facts presented below on the City's property interest in the TCC.

## PREEMPTION

¶ 5 Because the resolution of the appeal of the second case substantially affects the appeal of the first case and the City's appeal of the award of attorney's fees, we address the appeal of the second case first. The City concedes that, by amending § 13–3108, the legislature preempted the City from using its police power to enact any ordinance or rule regulating firearms, but contends the legislature did not preempt it from acting as a proprietor to impose conditions on the use of its commercial property, even when the condition relates to firearms. Preemption is an issue of law that we review de novo. *City of Tucson v. Rineer*, 193 Ariz. 160, ¶ 2, 971 P.2d 207, ¶ 2 (App.1998).

¶ 6 Whether the state has preempted local legislation is "a question of legislative intent." *Babe's Cabaret v. City of Scottsdale*, 197 Ariz. 98, ¶ 11, 3 P.3d 1018, ¶ 11 (App.2000). That intent may be express or implied, but in either event, it "must be clear; a negative inference is insufficient." *City of Tucson v. Consumers for Retail Choice Sponsored by Wal–Mart*, 197 Ariz. 600, ¶ 7, 5 P.3d 934, ¶ 7 (App.2000). As in issues of general statutory interpretation, we discern legislative intent to preempt by first examining the language of the allegedly preemptive legislative act. *See id.* at ¶¶ 11–13, 5 P.3d 934. If the language is "inconclusive" as to preemptive intent, we examine other factors such as the act's "context, subject matter, historical background, effects, consequences, spirit and purpose." *Hobson v. Mid–Century Ins. Co.*, 199 Ariz. 525, ¶ 8, 19 P.3d 1241, ¶ 8 (App.2001). "With respect to context, we consider both the statute in question and the 'entire legislative scheme.' " *Norgord v. State ex rel. Berning*, 201 Ariz. 228, ¶ 7, 33 P.3d 1166, ¶ 7 (App.2001), *quoting* 2A Norman J. Singer, *Statutes and Statutory Construction*, § 46:05 at 155–56 (6th ed. 2000).

### I. Statutory Language

¶ 7 Section 13–3108(A) prohibits the City from enacting "any ordinance ... relating to the transportation, possession, carrying, sale or use of firearms." Arguably, this language is broad enough to encompass the ordinance at issue here, which does relate to the sale of firearms. But the accompanying preamble suggests a narrower scope of preemptive intent. There, the legislature specifically stated its intent to "clarify existing law relating to the state's preemption of *firearms regulation*" and to "limit the ability of political subdivisions of this state to *regulate firearms.*" 2000 Ariz.Sess.Laws, ch. 376, § 4 (emphasis added). Although it relates to firearms, the City's ordinance does not invoke the City's police power to regulate firearms. *See Florida E. Coast Ry. Co. v. City of West Palm Beach*, 266 F.3d 1324, 1331 (11th Cir.2001) ("[Regulation of rail transportation] necessarily means something qualitatively different from laws 'with respect to rail transportation.' "); *Independent Taxicab Ass'n of Columbus v. Columbus Green Cabs, Inc.*, 84 Ohio App.3d 361, 616 N.E.2d 1144, 1148 (1992) (municipal contract is not police regulation); *Montgomery v. Oklahoma City*, 195 Okla. 312, 157 P.2d 454, 455 (1945) ("Where the language of an ordinance conclusively shows that it was the intention of the city legislators to regulate the business in order to protect the public from imposition and injury, the ordinance is an exercise of the police power or a police regulation."). Accordingly, it is not clear that the legislature intended the statute to apply to the City's control of its own property as opposed to the City's attempt to control third parties. And, read as a whole, the language of § 13–3108 is inconclusive. Accordingly, we look to other factors to discern the legislature's intended scope of preemption. *Hobson*.

### II. Constitutional Purpose

¶ 8 We presume the legislature intended to act with a constitutional purpose. *State v. Oakley*, 180 Ariz. 34, 38, 881 P.2d 366, 370 (App.1994). Under the Arizona Constitution, "[a]ny city containing ... a population of more than three thousand five hundred may frame a charter for its own government consistent with, and subject to, the Constitution and the laws of the State." Ariz. Const. art. XIII, § 2. Such a charter is the "organic law" of a city, *Union Transportes de Nogales v. City of Nogales*, 195 Ariz. 166, ¶ 9, 985 P.2d 1025, ¶ 9 (1999), and

"does not exist subject to the will of the legislature." *City of Tucson v. Tucson Sunshine Climate Club,* 64 Ariz. 1, 4, 164 P.2d 598, 599 (1945). Thus, it is well settled that " 'a charter city is sovereign in all its "municipal affairs" where the power ... to be exercised has been specifically or by implication granted in its charter.' " *Strode v. Sullivan,* 72 Ariz. 360, 363, 236 P.2d 48, 50 (1951), *quoting Mayor of City of Prescott v. Randall,* 67 Ariz. 369, 371, 196 P.2d 477, 478 (1948).

¶ 9 Municipal affairs subject to local control, independent of any state legislative interference, are those subjects of "solely local concern," rather than subjects of statewide or mixed statewide and local concern. *City of Tucson v. Consumers for Retail Choice,* 197 Ariz. 600, ¶ 6, 5 P.3d 934, ¶ 6. In general, when a city acts "as an agent of the state," the subject upon which it acts is not of solely local concern. *Luhrs v. City of Phoenix,* 52 Ariz. 438, 443, 83 P.2d 283, 285 (1938). "Some [municipal] activities are so noticeably local or state-wide that they are easily assignable...." *Id.* at 442, 83 P.2d at 285; *Tucson Sunshine Climate Club,* 64 Ariz. at 8, 164 P.2d at 602.

¶ 10 Our supreme court has held that "the sale or disposition of property by charter cities" is a matter of solely local concern in which the state legislature may not interfere. *City of Tucson v. Arizona Alpha of Sigma Alpha Epsilon,* 67 Ariz. 330, 336, 195 P.2d 562, 566 (1948). Here, the use permit the parties entered into is, for purposes of preemption analysis, essentially a lease, which is a disposition of property. *See Foundation Dev. Corp. v. Loehmann's, Inc.,* 163 Ariz. 438, 442, 788 P.2d 1189, 1193 (1990) (lease is conveyance of property). Although the McManns asserted at oral argument that the use permit was not a disposition of property, they provided no authority for that assertion and we reject it. Because the use permit is a disposition of property, albeit for a short time period, binding precedent from the supreme court dictates that the issue here is one of solely local concern not subject to the will of the legislature. *Foundation Dev. Corp.; Arizona Alpha.* Accordingly, in order to construe § 13–3108 constitutionally,

we presume that the legislature did not intend to prohibit the City from enacting reasonable restrictions on the use of the TCC by those to whom it is leased.

¶ 11 Additionally, municipalities have a constitutional right to engage in business activities. Ariz. Const. art. II, § 34; art. XIII, § 5; *City of Tucson v. Polar Water Co.,* 76 Ariz. 126, 133, 259 P.2d 561, 566 (1953), *modified on other grounds,* 76 Ariz. 404, 265 P.2d 773 (1954); *Shaffer v. Allt,* 25 Ariz.App. 565, 568, 545 P.2d 76, 79 (1976). Operation of a convention center is a constitutionally permitted business activity. *See Shaffer,* 25 Ariz.App. at 568–69, 545 P.2d at 79–80. *See also Book–Cellar, Inc. v. City of Phoenix,* 150 Ariz. 42, 44, 721 P.2d 1169, 1171 (App.1986) (operation of state fairgrounds is commercial activity). When engaging in business activities, a city is presumed to act under the same restrictions as a private person. *Shaffer,* 25 Ariz.App. at 571, 545 P.2d at 82. Because § 13–3108 does not prohibit a private property owner from requiring a promoter, such as the McManns, to institute a system of background checks in order to allow firearms to be sold on his or her property, we presume that nothing in that statute prohibits the City from doing so regarding the TCC.

¶ 12 This conclusion is bolstered by the holding in *Great Western Shows, Inc. v. County of Los Angeles,* 27 Cal.4th 853, 118 Cal.Rptr.2d 746, 44 P.3d 120 (2002). In that case, the California Supreme Court determined that several statutes purporting to limit a political subdivision's right to regulate firearms did not preempt a county ordinance that prohibited holding gun shows on county property. In doing so, the court concluded that a county's power to " 'manage' [its own] property must necessarily include the fundamental decision as to how the property will be used." *Id.* at 130, *quoting* Cal.Gov't Code § 23004(d) (West 2001). The county was thus "empowered to ban [gun] shows on its own property" and, even if it did allow gun shows to take place, it could "impose more stringent restrictions on the sale of firearms than state law prescribes." *Great Western Shows,* at 131; *see also Nordyke v. King,* 27 Cal.4th 875, 118 Cal.Rptr.2d 761, 44 P.3d 133,

137 (2002). Based on a charter city's power to sell or dispose of real property, and its constitutional right to use its property for business purposes, we reach the same conclusion here.

## III. Other Indications of Legislative Intent

■ ¶ 13 The historical background of § 13–3108 is also consistent with the view that the legislature did not clearly intend to preempt the City's ordinance. In *Rineer*, 193 Ariz. 160, ¶¶ 1, 11, 971 P.2d 207, ¶¶ 1, 11, we held that the former version of § 13–3108 did not preempt the City of Tucson from enacting an ordinance criminalizing the possession of firearms in city parks.[3] The legislature amended § 13–3108 in 2000 in direct response to *Rineer*. 2000 Ariz.Sess.Laws, ch. 376, § 2. *See State Preemption; Firearms: Hearing on H.B.2095 Before the Senate Comm. on Gov't and Envtl. Stewardship*, 44th Legis., 2d Reg.Sess. 13 (Ariz.2000) (statement of Senator Richardson).[4] *Cf.* § 13–3108(C)(5) (relating to parks). In doing so, the legislature's primary concern, according to the only legislative history of which we are aware, was to ensure that conduct legal in one municipality is not illegal in another and that citizens have access to firearms for protection, not to prevent cities from determining how to use their commercial property. *Hearing on H.B.2095*, at 10, 11, 12, 14, 15 (statements of Alicia Wadas, Phoenix; Senator Richardson; Senator Mitchell; Senator Guenther; Senator Bowers; Darren La Sorte, National Rifle Association). *See Hayes v. Continental Ins. Co.*, 178 Ariz. 264, 270, 872 P.2d 668, 674 (1994) (nonlegislator's comments only considered to show what was not under consideration); *see also Montgomery*. Neither of the expressed concerns of the legislators is implicated by the City's requirement of background checks at the TCC.

¶ 14 Furthermore, the context of § 13–3108 in the entire legislative scheme does not establish a clear legislative intent to preempt the City's ordinance. First, the legislature placed § 13–3108 in the Arizona criminal code, *see* Title 13, A.R.S., rather than in either Title 9, A.R.S., which relates to cities and towns in general or Title 33, A.R.S., which relates to property rights in general. That placement strongly suggests that the legislature only intended to preempt municipalities from enacting local criminal ordinances relating to firearms. *See Cherry v. Municipality of Metro. Seattle*, 116 Wash.2d 794, 808 P.2d 746, 749 (1991) ("penal nature" of preemptive firearm statute suggests it was enacted to prevent "conflicting local criminal codes"). *Cf. Norgord*, 201 Ariz. 228, ¶ 8, 33 P.3d 1166, ¶ 8 (placement of indecent exposure statute in chapter of criminal code entitled "Sexual Offenses" suggests legislature intended to classify indecent exposure as sexual offense).

¶ 15 Additionally, elsewhere in the same chapter of the criminal code relating to weapons and explosives, the legislature has recognized that municipalities may reasonably request people to completely refrain from bringing deadly weapons, including firearms, into public establishments such as the TCC. A.R.S. § 13–3102(A)(10).[5] The legislature's recognition of municipalities' power to prohibit possessing firearms altogether suggests that it also recognizes that municipalities

---

**3.** Before the 2000 amendment, A.R.S. § 13–3108(A) read: "Ordinances of any political subdivision of this state relating to the transportation, possession, carrying, sale and use of firearms in this state shall not be in conflict with this chapter." 1983 Ariz.Sess.Laws, ch. 148, § 1.

**4.** This court may take judicial notice of committee meeting minutes. *Hayes v. Continental Ins. Co.*, 178 Ariz. 264, 269 n. 5, 872 P.2d 668, 673 n. 5 (1994).

**5.** Section 13–3102(A)(10), A.R.S., defines a person's misconduct involving weapons as knowingly "entering any public establishment or attending any public event and carrying a deadly weapon on his person after a reasonable request

by the operator of the establishment or the sponsor of the event or the sponsor's agent to remove his weapon and place it in the custody of the operator of the establishment or the sponsor of the event." For purposes of § 13–3102(A)(10), "public establishment" means, inter alia, "a structure ... that is owned, leased or operated by ... a political subdivision of this state." § 13–3102(K)(1). Contrary to the McManns' argument, even when used for a gun show, the TCC is not a "shooting range[ ] or shooting event[ ], hunting area[ ] or other similar location[ ] or activit[y]." § 13–3102(G). Thus, it is not excepted from § 13–3102(A)(10).

have the lesser power to place conditions on the presence of firearms in public establishments. *See Posadas de Puerto Rico Assocs. v. Tourism Co. of Puerto Rico*, 478 U.S. 328, 345–46, 106 S.Ct. 2968, 2979, 92 L.Ed.2d 266, 283 (1986) ("[T]he greater power to completely ban casino gambling necessarily includes the lesser power to ban advertising of casino gambling.").

¶ 16 Moreover, we reject the McManns' argument that § 13–3108(C)(5) establishes any legislative intent to preempt the City from managing its commercial property in relation to firearms. As noted above, the legislature amended § 13–3108, including the addition of subsection (C)(5), in response to our decision in *Rineer* regarding the regulation of firearms in city parks. In fact, subsection (C)(5) provides an exception to the general prohibition on firearm regulations, permitting the City to adopt ordinances regulating the possession of firearms in city parks. Subsection (C)(5) does not, however, establish the legislature's intent to further preempt the City from controlling the use of the TCC.

¶ 17 We also find misplaced the McManns' reliance on two out-of-state cases. *Doe v. City & County of San Francisco*, 136 Cal. App.3d 509, 186 Cal.Rptr. 380, 384 (1982), and *Schneck v. City of Philadelphia*, 34 Pa. Cmwlth. 96, 383 A.2d 227, 228 (1978). Both cases involved ordinances regulating firearms throughout the respective local jurisdictions. Because that is not this case, the reasoning in *Doe* and *Schneck* does not apply.

¶ 18 For the foregoing reasons, and in order to construe the statute constitutionally, *Oakley*, we conclude that the legislature did not clearly intend to preempt the City from requiring background checks on prospective firearms purchasers at events held at the TCC. This interpretation is entirely consistent with the available legislative history and other indications of legislative intent.

## REQUEST FOR ATTORNEY'S FEES

¶ 19 The City requests attorney's fees incurred at trial and on appeal of the second case based on a provision of the use permit, which states: "If [the McManns] breach[ ]

this covenant [not to initiate legal challenges to the background check policy] by initiating any such challenge or claim, [the McManns] shall be liable for all costs associated with the City's defense thereof." Because the McManns have not argued that attorney's fees are not "costs" as that term is used in the use permit, we will assume that they are. To adequately address this issue we must first address the McManns' appeal in the first case.

¶ 20 The McManns argue the trial court erred by dismissing their first declaratory judgment case based on its finding that no justiciable controversy existed because the McManns had not executed the use permit. Declaratory judgment is available "to declare rights, status, and other legal relations whether or not further relief is or could be claimed." A.R.S. § 12–1831. It allows a court to construe any contract, statute, or municipal ordinance and to declare rights, duties, and legal relationships. A.R.S. § 12–1832. The remedy under § 12–1831 is available "when the relief sought comes within the language of the statute and the parties and circumstances before the court insure an adequate and thoroughly controverted presentation of the issues involved." *Western Sav. & Loan Ass'n v. Robinson*, 14 Ariz.App. 393, 398, 483 P.2d 806, 811 (1971). "Under the declaratory judgments act a justiciable controversy exists if there is 'an assertion of a right, status, or legal relation in which the plaintiff has a definite interest and a denial of it by the opposing party.'" *Keggi v. Northbrook Property & Cas. Ins. Co.*, 199 Ariz. 43, ¶ 10, 13 P.3d 785, ¶ 10 (App.2000), *quoting Samaritan Health Servs. v. City of Glendale*, 148 Ariz. 394, 395, 714 P.2d 887, 888 (App.1986).

¶ 21 Here, the McManns contested whether, in light of § 13–3108, the City had the authority to enact its ordinance that required the background check procedure as a condition of issuing the use permit. Additionally, the McManns had already paid a deposit to use the TCC for the gun show that was ultimately the subject of the use permit and, therefore, had a contractual relationship with the City. The City inserted a new provision in the use permit based on its

ordinance. There can be no doubt that the parties intended to present and defend the issues adequately and that a justiciable controversy ripe for declaratory relief existed. *See generally* A.R.S. § 12–1832. Thus, the trial court erred in dismissing the first case.

¶ 22 The McManns argue the trial court's error in dismissing the first case prevents the City from recovering attorney's fees according to the terms of the use permit. Ordinarily, we enforce contractual provisions for attorney's fees according to their terms. *F.D.I.C. v. Adams,* 187 Ariz. 585, 595, 931 P.2d 1095, 1105 (App.1996). But, because of the trial court's error in dismissing the first case, the McManns were faced with the peculiar circumstance of being unable to obtain declaratory relief without signing the use permit and then breaching the covenant not to challenge the background check policy. Under that unique circumstance, arising from judicial error, we find the fee provision repugnant to a sense of fair play and decline to enforce it. Furthermore, we hesitate to encourage the City to attempt to avoid judicial review of its actions.

¶ 23 The City also requests attorney's fees pursuant to A.R.S. § 12–341.01(A). In our discretion, we deny that request. *See John-son v. Tempe Elementary Sch. Dist. No. 3 Governing Bd.,* 199 Ariz. 567, ¶ 18, 20 P.3d 1148, ¶ 18 (App.2000). In view of our disposition of the case, we reverse the trial court's award of fees to the McManns in the second case. They are no longer the successful party. *See* § 12–341.01(A).

## DISPOSITION

¶ 24 The trial court's order enjoining the City from enforcing its February 5, 2001, ordinance is vacated, as is the trial court's award of attorney's fees to the McManns in the second case. The City's requests for attorney's fees are denied. Because the appeal in the second case resolved all contested issues, we dismiss as moot the McManns' appeal in the first case.

CONCURRING: PHILIP G. ESPINOSA, Chief Judge, and WILLIAM E. DRUKE, Judge.