DISSENTING OPINION BY
SENIOR JUDGE PELLEGRINI
I respectfully dissent because the trial court had an “apparently reasonable basis” to refuse to issue a preliminary injunction[1] to declare invalid a 2011 township ordinance dealing with guns in its parks, and no action for a civil penalty has been brought under our restrictive scope of review which forecloses inquiry into the merits of the controversy. Even on the underlying merits, the majority gets it wrong as our case law is clear: a local government can control, like every other property owner, what takes place on its property. The net result of the majority not following our case law is something that the General Assembly never intended—that a local government must permit guns in and on property that it owns, including its recreation centers, ballfields, daycare centers and libraries, not to mention county offices in the courthouse, in its police department, at its jail, in its council chambers, in its mayor’s office and so on.
I.
In 2011, Lower Merion Township (Township) amended Code Section 109-16 (Ordinance) of its Code to prohibit persons from “carrying] or discharging] firearms of any kind in a park without a special permit, unless exempted.” Lower Merion Township, Pa., Code § 109-16 (2015). The Ordinance permits police to remove violators from Township parks and imposes a maximum fine of $600.00 per violation.[2]
Firearm Owners Against Crime (FOAC), Kim Stolfer and Joseph Abram- *1183 son (collectively, “FOAC”) contacted the Township in 2014 alleging that the Ordinance • unlawfully restricts firearms in Township parks in violation of Section 6120(a) of the Pennsylvania Uniform Firearms Act (UFA), 18 Pa.C.S. § 6120(a), which provides:
(a) General rule.—No county, municipality or township may in any manner regulate the lawful ownership, possession, transfer or transportation of firearms, ammunition or ammunition components when carried or transported for purposes not prohibited by the laws of this Commonwealth.
The Township initially contemplated revising the Ordinance, but because it concluded that the Ordinance only prohibited the unlawful possession and discharge of firearms in parks, it determined that the Ordinance did not violate the UFA and decided not to repeal or revise it.
FOAC then held a rally in a Township park at which many of its members carried firearms. No citations were issued, no threats of prosecution were made and there is no evidence that the Township has ever enforced the Ordinance against anyone, including FOAC members.
II.
FOAC then filed a Complaint seeking declaratory and injunctive relief against the Township asserting the Ordinance is unconstitutional[3] and preempted by Section 6120(a) of the UFA. In the Complaint, FOAC averred that the Township publicly announced its intention to enforce the Ordinance. FOAC then sought a preliminary injunction to prevent the enforcement of the Ordinance. FOAC admitted, however, that it was unaware of any person prosecuted under the Ordinance and did not contend that any individual was specifically threatened with prosecution or penalty under the Ordinance.
At the preliminary injunction hearing, the Township emphasized that the Ordinance has never been used to prosecute, cite or threaten any person, including FOAC members. The Township reasserted that it enacted the Ordinance to merely echo the state law’s prohibition against persons carrying concealed firearms without a permit, and that the Ordinance treats persons who lawfully carry non-con-eealed firearms in its park as being “exempt.” Further, the Township contended that FOAC does not have a clear right to relief because the Ordinance is not a regulation of firearms, but is instead an action carried out by the Township under its inherent power to operate the property that it owns - in -this case, its parks - and that such conduct is not preempted by the UFA. , •
Because the trial court determined that FOAC neither presented evidence demonstrating actual proof of harm outside of those founded on speculation and hypothesis nor established the existence of an immediate, irreparable harm justifying extraordinary relief, the trial court concluded that FOAC failed to meet the standards necessary to grant a preliminary injunction arid denied its motion. Also, the trial court found that the Township proffered weighty arguments against FOAC’s claim for relief and, noting this Court’s decision in Minich v. County of Jefferson, 869 A.2d 1141 (Pa. Cmwlth.), appeal denied, 585 Pa. 700, 889 A.2d 90 (2006), it determined that FOAC failed to set forth a clear right to relief and that this matter should be fully adjudicated at a regular trial.
*1184 The majority reverses the trial court’s refusal to grant a preliminary injunction because it finds that the Ordinance in question violates the prohibition against a local government enacting general laws that regulate firearms in or on its own property. Not only is that conclusion wrong, while paying lip service to it, the majority also ignores that our scope of review for preliminary injunctions is “a narrow one — we ‘do not inquire into the merits of the controversy, but only examine the record to determine if there were any apparently reasonable grounds for the action of the court below. Only if it is plain that no grounds exist to support the decree or that the rule of law relied upon was palpably erroneous or misapplied will we interfere with the decision of the [Court].’ ” Dillon v. City of Erie, 83 A.3d 467, 472 n.7 (Pa. Cmwlth. 2014) (quoting The Woods at Wayne Homeowners Association, 893 A.2d at 204) (emphasis added). Instead, I would affirm the trial court for the following reasons.
m.
A.
Because FOAC did not suffer any immediate, irreparable harm or establish likelihood that they would suffer any personal harm, the trial court had reasonable grounds to deny FOAC’s motion for preliminary injunction. There was nothing in the preliminary injunction record establishing that FOAC members have been prosecuted or that there is even a threat of prosecution, including at an FOAC rally held at a Township park at which many of its members carried firearms. Although FOAC allegedly fears the Ordinance’s enforcement, the trial court reasonably concluded that such a generalized, speculative fear was insufficient for the purpose of enjoining enforcement of the Ordinance. As this Court has explained, “[w]hile one does not have to wait for an actual prosecution to have standing, ‘[i]njunctive relief is not available to eliminate a possible remote future injury or invasion of rights.’ ” Dillon, 83 A.3d at 475 (quoting Jamal v. Department of Corrections, 121 Pa. Cmwlth. 42, 549 A.2d 1369, 1371 (1988), appeal denied, 520 Pa. 620, 554 A.2d 512 (1989)). Given FOAC’s rally in a Township park at which many of its members carried firearms where no citations were issued and no threats of prosecution were made, and given that there is no evidence the Township ever enforced the Ordinance against anyone, including FOAC members, any harm is less than a remote possible injury or invasion of rights.
B.
1.
There are several reasons why FOAC does not have a clear right to relief. First, from the discussion above, because there have been no threats by the Township of bringing an action for a civil penalty against anyone, FOAC has not suffered irreparable harm which, if we were considering preliminary objections rather than preliminary injunctions, is the same as saying that it has no standing to maintain this action.[4] In National Rifle Association v. City of Pittsburgh, 999 A.2d 1256 (Pa. Cmwlth. 2010), a general ordinance was challenged requiring the owner of a lost or *1185 stolen firearm to report to law enforcement within 24 hours of the discovery of the loss or theft. The plaintiffs lived in Pittsburgh, owned guns and had valid permits to carry concealed weapons. Three of the plaintiffs alleged that they lived in areas where residential burglaries were common, and the fourth alleged that a gun belonging to him had been stolen. The trial court found that the plaintiffs lacked standing to challenge the ordinance because they had not shown they were aggrieved. On appeal, we adopted the reasoning of our opinion in National Rifle Association v. City of Philadelphia, 977 A.2d 78 (Pa. Cmwlth. 2009), which itself adopted the portion of the trial court’s opinion holding that the possibility that one of the'plaintiffs might lose a gun in the future, fail to report it and then be punished was too remote and speculative to give them standing to challenge the legality of the theft reporting ordinance. Moreover, we stated that the ordinance’s purported violation of the UFA could not create a sufficient hardship that would ipso facto create automatic standing to challenge that ordinance. See id. at 1260; see also Dillon, 83 A.3d at 475 (holding plaintiff did not have standing to challenge a local ordinance where there was no indication that its penalties would ever be applicable to him).
In this case, that FOAC would be subject to civil penalty is similarly remote and speculative. No one was ever cited or threatened with citation under the Ordinance and, given the Township’s assertion that it enacted the Ordinance to merely echo the state law’s prohibition against persons carrying concealed firearms without a permit and that the Ordinance treats persons who lawfully carry non-concealed firearms in its park as being “exempt,” FOAC lacks standing to maintain the action. That alone serves as an “apparently reasonable basis” for sustaining the trial court’s refusal to grant a preliminary injunction.
2,
Second, FOAC does not have a clear right to relief under Section 6120(a) of the UFA because the Township’s Ordinance does not regulate firearms. Instead, it carries out the Township’s inherent power to control what takes place on its property— in this case, its parks—and such conduct is not preempted by the UFA. In Minich, we held that county officials could refuse to allow guns in county offices in a courthouse because the UFA did not preempt local ordinances that only regulate the unlawful use and possession of firearms on government property, reasoning:
Section 6120(a) of the [UFA] provides that “[n]o county ... may in any manner regulate the lawful ... possession ... of firearms ... when carried ... for purposes not prohibited by the laws of this Commonwealth.” 18 Pa. C.S. § 6120(a) (emphasis added). In other words, the County may not enact an ordinance which regulates firearm possession if the ordinance would make the otherwise lawful possession of a firearm unlawful. Thus, if the County’s ordinance pertains only to the unlawful possession of firearms, i.e., possession “prohibited by the laws of this Commonwealth,” then section 6120(a) of the Crimes Code does not preempt the County’s ordinance.
869 A.2d at 1143 (footnote omitted) (emphases in original).[5]
In this case, as the Township contends and the trial court accepted, that is all this *1186 Ordinance does—it addresses how to deal with the unlawful possession of firearms in parks under state law and nothing else. Because Minich held that type of regulation was not preempted by Section 6120(a) of the UFA to prohibit guns in county offices, the trial court had an “apparently reasonable basis” to find that FOAC did not have a clear right to relief.
In Wolfe v. Township of Salisbury, 880 A.2d 62 (Pa. Cmwlth. 2005), we reiterated that a local government could forbid firearms on its property because it was not regulating firearms as a municipality but instead carrying out its inherent right as a property owner to control what conduct occurs on its own property.[6] We explained:
Preemption is applicable where a township has acted to regulate hunting as a township; that is, throughout the municipality. This Ordinance, however, is applicable only to the properties owned by the Township itself. The Township has exercised its authority, as any other property owner may, to “regulate” hunting on its property, consistent with the [Game and Wildlife Code (Game Law), 34 Pa. C.S. §§ 101-2965]. There is no authority to suggest that municipalities that own property are treated differently than individuals under the Game Law with respect to property ownership rights.
Wolfe, 880 A.2d at 69 (footnote omitted).
As can be seen from Wolfe, the Township was not attempting to regulate conduct throughout the municipality but only what takes place on property that it owns or controls. What Minich and Wolfe teach us is that Section 6120(a) of the UFA does not preempt a local government from acting like any other property owner and control what occurs on its • property by allowing or not allowing conduct that it feels is not in its best interest or that of its guests.[7]
The majority does not dispute that Mi-nich and Wolfe say what they say, but instead argues that they are inconsistent with our Supreme Court’s decision in Ortiz *1187 v. Commonwealth, 545 Pa. 279, 681 A.2d 152 (1996), and our decision in City of Philadelphia, 977 A.2d at 82. Let us examine each of those cases.
Ortiz dealt with an action brought by a city councilman in Philadelphia seeking a declaration that Philadelphia, under its home rule powers, had the power to enact general ordinances to regulate assault weapons even though Section 6120(a) of the UFA had prohibited it from doing so. Our Supreme Court held that even though Philadelphia was a home rule municipality, it was still foreclosed from enacting such an ordinance because the UFA was an act of statewide application,
Neither Minieh nor Wolfe, however, are inconsistent with Ortiz. Minieh distinguished Ortiz as “stating that the General Assembly may negate ordinances enacted by home rule municipalities only when the conflicting state statute concerns substantive matters of statewide concern.” Minich, 869 A.2d at 1143 n.3 (emphasis in original). Our Supreme Court also apparently did not believe that our holding in Minieh was inconsistent with Ortiz since it denied Mr. Minich’s request for allowance of appeal from our decision. 585 Pa. 700, 889 A.2d 90 (2005).
In City of Philadelphia, after we agreed with the trial court that the plaintiff lacked standing to challenge certain ordinances, we went on to find that the plaintiff had standing to challenge the legality of ordinances banning straw purchases of handguns and purchases of assault weapons. Echoing Minieh, we stated- that while we “may agree with the City that preemption of 18 Pa.C.S. § 6120(a) appears to be limited to the lawful use of firearms by its very terms,” id. at 82, we went -on to hold that the city could not enact those ordinances because, in Ortiz, our Supreme Court stated that “the General Assembly has [through enactment of § 6120(a) ] denied all municipalities the power to regulate the ownership, possession, transfer or [transportation] of firearms.” Id.
I do not disagree with that holding. In fact, I joined in that decision that a local government cannot enact ordinances that regulate guns, notwithstanding that it frustrated the “City’s latest attempt to regulate certain activity with respect to firearms in its ongoing efforts to address the unfortunate and tragic proliferation of gun crimes in the City.” City of Philadelphia, 977 A.2d at 80. However, neither Minieh nor Wolfe dealt with the general regulation of firearms or ownership of firearms, only with the power of local governments to control what takes place on their property, which we found in those cases was not preempted by the UFA.[8]
The majority takes an absolutist view and ignores the distinction between the general laws at issue in Ortiz and City of Philadelphia and the control of what takes place on local government property that *1188 was at issue in Minich and Wolfe. It also seems to ignore the principle that when interpreting our case law, just as when interpreting a statute, we are to interpret them in a manner that makes them consistent, not inconsistent. Because Minich and Wolfe remain good law, the trial court had an apparent reasonable basis to deny the request for a preliminary injunction.
Accordingly, because the trial court had apparently reasonable grounds to conclude that FOAC did not have a clear right to relief, I would affirm the trial court’s denial of FOAC’s motion for a preliminary injunction.

. "The essential prerequisites of a preliminary injunction are as follows: (1) The injunction is necessary to prevent immediate and irreparable harm not compensable in money damages. (2) Greater injury will result from refusing the injunction than from granting it. (3) The injunction restores the parties to status quo ante. (4) The activity sought to be restrained is actionable, and the plaintiff’s right to relief is clear.” The Woods at Wayne Homeowners Association v. Gambone Brothers Construction Co., Inc., 893 A.2d 196, 204 (Pa. Cmwlth.), appeal denied, 588 Pa. 767, 903 A.2d 1235 (2006) (citation omitted). The status quo ante to be preserved by a preliminary injunction is the last actual, peaceable, lawful, non-contested status which preceded the pending controversy. Id. at 204 n.10.

. See Lower Merion Township, Pa., Code § 109-21 (imposing civil penalties). The provision does not provide for any "in default of payment” jail time; the only penalty imposed is civil in nature. In Town of McCandless v. Bellisario, 551 Pa. 83, 709 A.2d 379 (1998), our Supreme Court addressed what level of due process protection was due when municipal ordinances did not provide for imprisonment:
While the enforcement of municipal ordinances that provide for imprisonment upon conviction or failure to pay a fine or penalty must follow the Rules of Criminal Procedure, the same is not true for municipal ordinances that do not provide for imprisonment upon conviction or failure to pay a fine or penalty, which, by definition, are not Penal Laws, and are therefore not included in the definition of "criminal proceedings.” Pa.R.Crim.P. 3. The higher degree of protection provided by the Rules of Criminal Procedure does not apply to municipal ordinance enforcement actions where imprisonment is not a remedy for a conviction or failure to pay a fine.
Id. at 381 (emphases in original).

. Article I, Section 21 of the Constitution of Pennsylvania provides that the "right of the citizens to bear arms in defense of themselves and the State shall not be questioned.” Pa. Const/art. I, § 2!.

. Because FOAC primarily asserted automatic standing through 18 Fa. C.S. § '6120(a.l'), the Township also filed a motion to stay proceedings until this court decided whether the statute violated the Pennsylvania Constitution. The Township's motion was denied. This court and our Supreme Court have since held that the provision violated the state constitution's single subject and original purpose requirements. Leach v. Commonwealth, 118 A.3d 1271 (Pa. Cmwlth. 2015), affirmed, 141 A.3d 426 (Pa. 2016).

. The above passage in Minich also provides a footnote:
See Schneck v. City of Philadelphia, 34 Pa.Cmwlth. 96, 383 A.2d 227 (1978) (stating that it is a well-established principle *1186 of law that where a state statute preempts local governments from imposing regulations on a subject, any ordinance contrary to state law is unenforceable); see also Ortiz v. Commonwealth, 545 Pa. 279, 681 A.2d 152 (1996) (stating that the General Assembly may negate ordinances enacted by home rule municipalities only when the conflicting state statute concerns substantive matters of statewide concern).
869 A.2d at 1143 n.6 (emphases in original).

. A municipality, in acquiring and maintaining parks and playgrounds, exercises a proprietary, rather than a governmental, function; municipalities are liable for the improper management and use of their property. See DeSimone v. City of Philadelphia, 380 Pa. 137, 110 A.2d 431 (1955); Stevens y. City of Pittsburgh, 329 Pa. 496, 198 A. 655, 657-58 (1938).

. In Dillon, 83 A.3d at 473 n.9, we stated:
Not raised by the City is Section 3710 of the Third Class City Code, Act of June 23, 1931, P.L. 932, as amended, 53 P.S. § 38710, which provides, in pertinent part, that the City "shall at all times be invested with the power and authority to adopt suitable rules and regulations concerning the use and occupation of [its] parks and playgrounds by the public generally, ...” It could be argued that the City may be empowered under that grant of power from the State to regulate the possession of firearms in its parks pursuant to its proprietary power to control conduct that takes place on its property rather than through an ordinance of general application enacted pursuant to its general police powers. Similarly, Section 11.215 of the regulations of the Commonwealth's Department of Conservation and Natural Resources, 17 Pa. Code § 11.215, generally prohibits "[possessing an uncased device, or uncasing a device, including a firearm, ... that is capable of discharging or propelling a projectile ...” in state parks, subject to a number of enumerated exceptions.

. See Calguns Foundation, Inc. v. County of San Mateo, 218 Cal.App.4th 661, 676-77, 160 Cal.Rptr.3d 698 (Cal. Ct. App. 2013) (Park gun ban not preempted, in part, because it is "very narrow” "land use regulation” and “pertains only to specific areas within the county, and areas patently subject to the governance of the County Board of Supervisors, i.e., its parks and recreation areas.”); Hunters, Anglers & Trappers of Vermont, Inc. v. Winooski Valley Park District, 181 Vt. 12, 913 A.2d 391, 398-400 (2006) ("It is consistent for the Legislature to prohibit direct regulation of hunting ..., but also entitle municipalities to manage their own lands in the interests of recreation and conservation .... [T]he District was within its rights to place conditions on the use of its lands, which the Legislature has explicitly authorized the District to manage in the interest of conservation, among other interests.”) (internal citations omitted); Nordyke v. King, 27 Cal.4th 875, 118 Cal. Rptr.2d 761, 44 P.3d 133, 138 (2002) (can ban guns on county property); Great Western Shows, Inc. v. County of Los Angeles, 27 Cal.4th 853, 118 Cal.Rptr.2d 746, 44 P.3d 120, 127-28 (2002) (same); Peter Garrett Gun *1188 smith, Inc. v. City of Dayton, 98 S.W.3d 517, 520 (Ky. App. 2002) ("Without the power to control the location of gun shops and firearm dealers, a city could find itself at the mercy of the firearms businesses that could begin operating wherever they choose, for example, in the heart of a community, surrounded by single-family homes.”); McMann v. City of Tucson, 202 Ariz. 468, 47 P.3d 672; 677 (2002) ("[T]he legislature’s primary concern, according to the only legislative history of which we are aware, was to ensure that conduct legal in one municipality is not illegal in another and that citizens have access to firearms for protection, not to prevent cities from determining how to use their commercial property.”); id. at 678 (distinguishing Schneck v. City of Philadelphia, 34 Pa.Cmwlth. 96, 383 A.2d 227 (1978) and another decision because the "cases involved ordinances regulating firearms throughout the respective local jurisdictions”); Kaluszkav. Town of East Hartford, 46 Conn.Supp. 588, 760 A.2d 1282, 1286 n.1 (1999) aff'd, 60 Conn.App. 749, 760 A.2d 1269 (2000) (“Of course, the town, as owner, could restrict hunting on municipally owned property.”); City of Tucson v. Rineer, 193 Ariz, 160, 971 P.2d 207, 211 (Ariz. Ct App. 1998) (park gun ban "govern[s] conduct only within the city’s parles and prohibits firearms solely within those boundaries, a legitimate and narrow local concern”).