**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

RUSSELL ALLEN NORDYKE; ANN
SALLIE NORDYKE, dba TS TRADE
SHOWS; JESS B. GUY; DUANE DARR;
WILLIAM J. JONES; DARYL N.
DAVID; TASIANA WESTYSCHYN; JEAN
LEE; TODD BALTES; DENNIS BLAIR;
R.L. ADAMS; ROGER BAKER; MIKE
FOURNIER; VIRGIL MCVICKER,
           *Plaintiffs-Appellants,*

      v.

MARY V. KING; GAIL STEELE;
WILMA CHAN; KEITH CARSON;
SCOTT HAGGERTY; COUNTY OF
ALAMEDA; COUNTY OF ALAMEDA
BOARD OF SUPERVISORS,
           *Defendants-Appellees.*

No. 07-15763

D.C. No.
CV-99-04389-MJJ

OPINION

Appeal from the United States District Court
for the Northern District of California
Martin J. Jenkins, District Judge, Presiding

Argued En Banc March 19, 2012
Submitted May 24, 2012
San Francisco, California

Filed June 1, 2012

Before: Alex Kozinski, Chief Judge, Harry Pregerson,
Stephen Reinhardt, Diarmuid F. O'Scannlain,
Michael Daly Hawkins, Susan P. Graber, Ronald M. Gould,
Richard C. Tallman, Consuelo M. Callahan,
Milan D. Smith, Jr., and Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Graber;
Concurrence by Judge O'Scannlain;
Concurrence by Judge Ikuta

## COUNSEL

Donald Kilmer, Law Offices of Donald Kilmer, San Jose, California, and Don B. Kates, Battleground, Washington, for the plaintiffs-appellants.

T. Peter Pierce and Sayre Weaver, Richards, Watson & Gershon, Los Angeles, California, for the defendants-appellees.

John M. Grenfell, Pillsbury Winthrop Shaw Pittman LLP, San Francisco, California; Jordan Eth, Morrison & Foerster LLP, San Francisco, California; Jason Andrew Davis, Davis & Associates, Mission Viejo, California; C.D. Michel, Michel & Associates, P.C., Long Beach, California, and S.P. Halbrook, Fairfax, Virginia; Herbert W. Titus, William J. Olson, P.C., Vienna, Virginia; Jeffrey S. Bucholtz, King & Spalding LLP, Washington, D.C.; and Alan Gura, Gura & Possessky, PLLC, Alexandria, Virginia, for the amici curiae.

**OPINION**

GRABER, Circuit Judge:

The law and the facts relevant to Plaintiffs' Second Amendment claim have evolved during the 12 years since this case first reached our court. *See Nordyke v. King*, 644 F.3d 776, 781-82 (9th Cir. 2011) ("*Nordyke V*") ("summariz[ing] this case's long and tangled procedural history").[1] Under the present law and the present facts, we affirm the district court's decision to dismiss the Second Amendment claim.[2]

Recently, the Supreme Court recognized an individual right under the Second Amendment. *Dist. of Columbia v. Heller*, 554 U.S. 570 (2008). Even more recently, the Court held that this right is fundamental and is incorporated against states and municipalities under the Fourteenth Amendment. *McDonald v. City of Chicago*, 130 S. Ct. 3020 (2010).

Plaintiffs Russell and Sallie Nordyke, along with other co-

---

[1]*See also Nordyke v. King*, 229 F.3d 1266 (9th Cir. 2000) ("*Nordyke I*"); *Nordyke v. King*, 44 P.3d 133 (Cal. 2002) ("*Nordyke II*"); *Nordyke v. King*, 319 F.3d 1185 (9th Cir. 2003) ("*Nordyke III*"); *Nordyke v. King*, 563 F.3d 439 (9th Cir. 2009) ("*Nordyke IV*"), *vacated*, 611 F.3d 1015, 1015 (9th Cir. 2010) (en banc).

[2]We affirm the district court's ruling on the First Amendment for the reasons given by the three-judge panel. *See Nordyke V*, 644 F.3d at 791-94. As to the Nordykes' equal protection claim, because the ordinance does not classify shows or events on the basis of a suspect class, and because we hold that the ordinance does not violate either the First or Second Amendments, rational basis scrutiny applies. *See Locke v. Davey*, 540 U.S. 712, 720 n.3 (2004); *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 54 (1983); *Johnson v. Robison*, 415 U.S. 361, 375 n.14 (1974). The equal protection claim fails because Alameda County could reasonably conclude that gun shows are more dangerous than military reenactments. This is enough to satisfy rational basis scrutiny. *See Williamson v. Lee Optical of Okla., Inc.*, 348 U.S. 483, 489 (1955) ("Evils in the same field may be of different dimensions and proportions, requiring different remedies. Or so the legislature may think.").

plaintiffs, seek to conduct gun shows at the Alameda County fairgrounds. In 1999, Alameda County enacted an ordinance that provides in relevant part:

> Possession of Firearms on County Property Prohibited
>
> . . . .
>
> (b)   Misdemeanor. Every person who brings onto or possesses on County property a firearm, loaded or unloaded, or ammunition for a firearm is guilty of a misdemeanor.
>
> . . . .
>
> (f)   Exceptions. Subsection 9.12.120(b) does not apply to the following:
>
> . . . .
>
>> (4)   The possession of a firearm by an authorized participant in a motion picture, television, video, dance or theatrical production or event, when the participant lawfully uses the firearm as part of that production or event, provided that when such firearm is not in the actual possession of the authorized participant, it is secured to prevent unauthorized use.

Alameda County, Cal., Ordinance Code § 9.12.120.

Plaintiffs challenged that ordinance as a violation of their Second Amendment rights. It is undisputed that Plaintiffs are legally authorized to sell firearms and that, if allowed to conduct a gun show on County property, they would offer for sale

only firearms that they lawfully could sell under federal and state statutes.

In its initial and supplemental briefing before the three-judge panel, and again during oral argument before the en banc court, counsel for Alameda County gave the County's current, official interpretation of its ordinance. The County now avers that a gun show is an "event" within the meaning of exception (f)(4). Moreover, the County affirmatively asserts that Plaintiffs, when conducting a gun show, may offer firearms for sale with the requirement that, when a "firearm is not in the actual possession of the authorized participant," the firearm must be "secured to prevent unauthorized use." *Id.* The County represents that a sturdy cable attaching the firearm to a fixture, such as a table, would suffice—much as cell phones, cameras, and other attractive items routinely are displayed for sale. The County further represents that buyers may physically inspect properly secured firearms.

**[1]** We hold the County to its interpretation of the ordinance, and its reading is a reasonable one. With that interpretation in mind, Plaintiffs cannot state a viable Second Amendment claim. Thus read, the ordinance regulates the sale of firearms at Plaintiffs' gun shows only minimally, and only on County property. No matter how broad the scope of the Second Amendment—an issue that we leave for another day—it is clear that, as applied to Plaintiffs' gun shows and as interpreted by the County, this regulation is permissible. *See Heller*, 554 U.S. at 626-27 ("Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on . . . laws imposing conditions and qualifications on the commercial sale of arms."); *see also Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 598 (2008) (observing, in the context of an equal protection claim against a governmental employer, that "there is a crucial difference, with respect to constitutional analysis, between the government exercising the power to regulate or license, as lawmaker, and the govern-

ment acting as proprietor, to manage its internal operation" (internal quotation marks and brackets omitted)); *United States v. Kokinda*, 497 U.S. 720, 725 (1990) (recognizing a distinction, for First Amendment purposes, between governmental exercise of the "power to regulate or license, as lawmaker" and governmental actions taken in its role "as proprietor, to manage its internal operations" (internal quotation marks and brackets omitted)).

**[2]** Should the County add new requirements or enforce the ordinance unequally, or should additional facts come to light, Plaintiffs or others similarly situated may, of course, bring a new Second Amendment challenge to the relevant laws or practices. But in the present case, they cannot succeed, no matter what form of scrutiny applies to Second Amendment claims.

AFFIRMED.

O'SCANNLAIN, Circuit Judge, joined by TALLMAN, CALLAHAN, and IKUTA, Circuit Judges, concurring in the judgment:

Twelve years into this appeal, the County of Alameda now represents that its ordinance presents no barrier to conducting gun shows on its property. Contrary to its previous assertions, the County now concedes that such an event can be held with firearms present and available for meaningful physical inspection by potential buyers.[1]

---

[1]Having made these concessions, the County is bound to them. Should the County at any time fail to apply the ordinance as it represented it at oral argument, Plaintiffs may of course bring suit. *Kreisner v. City of San Diego*, 1 F.3d 775, 787 n.8, 789 n.10 (9th Cir. 1993). And, of course, if we have misinterpreted the County's representations, either party may file a petition for rehearing. *See* Fed. R. App. P. 35.

The County's sweeping concessions—made at oral argument before the en banc court—change the game and make this a far different case from the one argued before the three-judge panel. Plaintiffs' Second Amendment challenge was based solely on their inability to conduct a successful gun show on county property. *See Nordyke v. King*, 644 F.3d 776, 781 n.4, 786-87 & n.10 (9th Cir. 2011). As gun shows may now be held on county property with only the restrictions described in the majority opinion, *see* majority op. at 6168, I agree with the majority that Plaintiffs' Second Amendment claim cannot succeed.

But I cannot agree with the majority's approach, which fails to explain the standard of scrutiny under which it evaluates the ordinance.[2] Rather than leave the level of scrutiny in doubt, I would expressly adopt the measured, calibrated approach developed in the original three-judge panel majority opinion, which considers carefully the extent of the regulation's burden on Second Amendment rights. *See Nordyke*, 644 F.3d at 782-88 (explaining that the level of scrutiny applied to gun control regulations depends on the regulation's burden on the Second Amendment right to keep and to bear arms); *cf. Heller v. District of Columbia*, 670 F.3d 1244 (D.C. Cir. 2011) (developing framework for reviewing gun control regulations with reference to the extent of the regulation's burden on Second Amendment rights); *Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011) (same); *United States v. Masciandaro*, 638 F.3d 458 (4th Cir. 2011) (same); *United States v. Chester*, 628 F.3d 673 (4th Cir. 2010) (same); *United States*

---

[2]All that is clear from the majority's approach is that the majority cannot be evaluating the ordinance under strict scrutiny. Strict scrutiny requires the government to show that it has taken the least restrictive means to serve a compelling government interest. It is an exceptionally difficult standard to satisfy. *See Bernal v. Fainter*, 467 U.S. 214, 219 & n.6 (1984). Here, the parties have not even had an opportunity to build a factual record regarding the County's new interpretation of its ordinance, so it is impossible to say at this stage that the County could establish that its ordinance would satisfy a least-restrictive-means analysis.

*v. Reese*, 627 F.3d 792 (10th Cir. 2010) (same); *United States v. Marzzarella*, 614 F.3d 85 (3d Cir. 2010) (same).

In light of the breadth of the County's concessions at oral argument, I am satisfied that the ordinance, as applied to Plaintiffs' gun shows and as now interpreted by the County, survives this standard. *See Nordyke*, 644 F.3d at 783-88. I therefore agree that the district court's denial of leave to amend should be affirmed. *See Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998); *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988); *Universal Mortg. Co. v. Prudential Ins. Co.*, 799 F.2d 458, 459 (9th Cir. 1986).

I concur in the judgment.

---

IKUTA, Circuit Judge, with whom CALLAHAN, Circuit Judge, joins, concurring in the judgment:

Given the procedural posture of this case, the majority cannot affirm the district court's ruling unless it would be futile to allow Plaintiffs to amend their complaint because Plaintiffs cannot state a claim for a Second Amendment violation as a matter of law. *See Miller v. Rykoff–Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988). Rather than applying a constitutional standard of review to Plaintiffs' Second Amendment challenge, *see* maj. op. at 6168, the majority applies the ever popular "rule of thumb" standard, concluding that an amendment of Plaintiffs' complaint is futile because the majority has the strong impression that County's newly interpreted ordinance is not sufficiently burdensome to violate the Second Amendment. The majority reaches this conclusion notwithstanding the lack of any basis in the record to ascertain how the requirement that firearms be tethered to a table, maj. op. at 6168, actually burdens gun shows, or the nature of the fit between this burden and the government's alleged purpose to

"promote the public health and safety by contributing to the reduction of gunshot fatalities and injuries in the County." Alameda County Mun. Code § 9.12.120(a).

Rather than take this rough-justice approach, we should decide this case by identifying the correct legal standard and only then determining whether Plaintiffs could amend their complaint to state a Second Amendment claim. I agree with Judge O'Scannlain that the County's "regulation, as applied to Plaintiffs' gun shows and as now interpreted by the County, survives the relevant standard," J. O'Scannlain concurrence at 6172, which is the intermediate scrutiny standard adopted in *Heller v. District of Columbia*, 670 F.3d 1244, 1252-53 (D.C. Cir. 2011), *United States v. Chester*, 628 F.3d 673, 683 (4th Cir. 2010), *United States v. Reese*, 627 F.3d 792, 800-02 (10th Cir. 2010), and *United States v. Marzzarella*, 614 F.3d 85, 97 (3d Cir. 2010), and the substantial burden standard adopted by the original three-judge panel. *See Nordyke v. King*, 644 F.3d 776, 782-88 (9th Cir. 2011). Therefore, I join Judge O'Scannlain's concurrence.