118 Cal.Rptr.2d 761 (2002)
27 Cal.4th 875
44 P.3d 133
Russell Allen NORDYKE et al., Plaintiffs and Appellants,
v.
Mary V. KING et al., Defendants and Respondents.
No. S091549.
Supreme Court of California.
April 22, 2002.
Rehearing Denied June 26, 2002.
*762 Richard Winnie, County Counsel; Richards, Watson & Gershon, Sayre Weaver, Los Angeles, Paul Gutierrez Baeza and T. Peter Pierce, San Francisco, for Defendants and Respondents.
Louise H. Renne, City Attorney, Joanne Hoeper, Chief Trial Attorney, Owen J. Clements, Chief of Special Litigation, Ellen M. Forman and D. Cameron Baker, Deputy City Attorneys for the City and County of San Francisco as Amicus Curiae on behalf of Defendants and Respondents.
Teresa Highsmith, Assistant City Attorney, for the City of Alameda as Amicus Curiae on behalf of Defendants and Respondents.
Law Office of Robert Zweben and Robert Zweben, Berkeley, for the City of Albany as Amicus Curiae on behalf of Defendants and Respondents.
Manuela Albuquerque, City Attorney, and Matthew J. Orebic, Deputy City Attorney, for the City of Berkeley as Amicus Curiae on behalf of Defendants and Respondents.
Michael Biddle, City Attorney, for the City of Emeryville as Amicus Curiae on behalf of Defendants and Respondents.
*763 Charles Dickerson, City Attorney, for the City of Inglewood as Amicus Curiae on behalf of Defendants and Respondents.
Charles Williams, City Attorney, for the City of Lafayette as Amicus Curiae on behalf of Defendants and Respondents.
Tom Curry, City Attorney, for the City of Livermore as Amicus Curiae on behalf of Defendants and Respondents.
Daniel S. Murphy, Principal Deputy City Attorney, for the City of Long Beach as Amicus Curiae on behalf of Defendants and Respondents.
James K. Hahn, City Attorney, and Carmel Sella, Assistant City Attorney, for the City of Los Angeles as Amicus Curiae on behalf of Defendants and Respondents.
Jayne W. Williams and John A. Russo, City Attorneys, Randolph W. Hall, Assistant City Attorney, J. Patrick Tang, Barbara J. Parker, Doryanna M. Moreno and Kandis A. Westmore, Deputy City Attorneys, for the City of Oakland as Amicus Curiae on behalf of Defendants and Respondents.
Lombardi, Loper & Conant and George S. Peyton, Jr., Oakland, for the City of Piedmont as Amicus Curiae on behalf of Defendants and Respondents.
Michael H. Roush, City Attorney, for the City of Pleasanton as Amicus Curiae on behalf of Defendants and Respondents.
Daniel J. McHugh, City Attorney, for the City of Redlands as Amicus Curiae on behalf of Defendants and Respondents.
Samuel L. Jackson, City Attorney, and William P. Carnazzo, Chief Assistant City Attorney, for the City of Sacramento as Amicus Curiae on behalf of Defendants and Respondents.
Robert Lazone, City Attorney, for the City of San Carlos as Amicus Curiae on behalf of Defendants and Respondents.
George Rios, City Attorney, for the City of San Jose as Amicus Curiae on behalf of Defendants and Respondents.
Roy Abrahms, City Attorney, for the City of San Mateo as Amicus Curiae on behalf of Defendants and Respondents.
Marsha Jones Mourtrie, City Attorney, for the City of Santa Monica as Amicus Curiae on behalf of Defendants and Respondents.
Rene A. Chouteau, City Attorney, for the City of Santa Rosa as Amicus Curiae on behalf of Defendants and Respondents.
Michel Jenkins, City Attorney, for the City of West Hollywood as Amicus Curiae on behalf of Defendants and Respondents.
Lloyd W. Pellman, County Counsel, Larry Hafetz and Judy W. Whitehurst, Deputy County Counsel, for the County of Los Angeles as Amicus Curiae on behalf of Defendants and Respondents.
Patrick Faulkner, County Counsel, and John F. Govi, Assistant County Counsel, for the County of Marin as Amicus Curiae on behalf of Defendants and Respondents.
Thomas F. Casey, County Counsel, and Brenda B. Carlson, Deputy County Counsel, for the County of San Mateo as Amicus Curiae on behalf of Defendants and Respondents.
Ann Miller Ravel, County Counsel, and Debra L. Cauble, Assistant County Counsel, for the County of Santa Clara as Amicus Curiae on behalf of Defendants and Respondents.
Steven M. Woodside, County Counsel, for the County of Sonoma as Amicus Curiae on behalf of Defendants and Respondents.
Barrie Becker and Juliet Leftwich, for Legal Community Against Violence as Amicus Curiae on behalf of Defendants and Respondents.
*764 David Durant, Oakland, for Youth Alive! as Amicus Curiae on behalf of Defendants and Respondents.
Law Offices of Jones & Mayer and Martin J. Mayer, Long Beach, for California Police Chiefs Association as Amicus Curiae on behalf of Defendants and Respondents.
Munger, Tolles & Olson and Jeffrey L. Bleich, San Francisco, for the Los Angeles County Bar Association, Beverly Hills Bar Association and Bar Association of San Francisco as Amici Curiae on behalf of Defendants and Respondents.
Law Offices of Donald Kilmer and Donald E.J. Kilmer, Jr., San Jose, for Plaintiffs and Appellants.
Trutanich  Michel, C.D. Michel; Benenson & Kates, Don B. Kates, San Pedro; and Bruce Colodny, San Bernardino, for California Rifle and Pistol Association as Amicus Curiae on behalf of Plaintiffs and Appellants.
Mark Barnes & Associates, Mark Barnes; Law Offices of Jeff Caufield and Jeff Caufield, for National Association of Arms Shows, Madison Society, Second Amendment Foundation, Bruce Colodny and Jess Guy as Amici Curiae on behalf of Plaintiffs and Appellants.
Robert C. Moest, San Pedro, for Law Enforcement Alliance of America as Amicus Curiae on behalf of Plaintiffs and Appellants.
MORENO, J.
We granted the request of the United States Court of Appeals for the Ninth Circuit, for certification pursuant to California Rules of Court, rule 29.5 to address the following question: Does state law regulating the possession of firearms and gun shows preempt a municipal ordinance prohibiting gun possession on county property? We conclude that the municipal ordinance in question, insofar as it concerns gun shows, is not preempted.
Other aspects of the ordinance may be partially preempted, but we need not address these aspects in this case.

I. Statement of Facts
The facts, as set forth by the Ninth Circuit and from our own review of the record, are as follows:
Plaintiffs Russell Allen Nordyke and Sallie Nordyke (doing business as TS Trade Shows) (the Nordykes) have been promoting gun shows at the Alameda County Fairgrounds (Fairgrounds) since 1991. The Fairgrounds are located on unincorporated county land in the City of Pleasanton and are managed by an independent nonprofit corporation, the Alameda County Fair Association (Fair Association), under an operating agreement with Alameda County. The exhibitors at the show include sellers of antique (pre 1898) firearms, modern firearms, ammunition, Old West memorabilia, and outdoor clothing. In addition, the show hosts educational workshops, issue groups, and political organizations. The remaining plaintiffs are exhibitors and patrons of the show.
Alameda County passed in August 1999 and amended in September 1999 an ordinance (Ordinance) making it a misdemeanor "to bring[ ] onto or possess[ ] on county property a firearm, loaded or unloaded, or ammunition for a firearm...." (Alameda County, Gen. Ord.Code, ch. 9.12, § 9.12.120, subd. B.) The Ordinance recited as justification the epidemic of gunshot fatalities or injuries in the countyin the first five years of the 1990's, 879 homicides were committed using firearms and 1,647 additional victims were hospitalized with gunshot injuries. The Ordinance also recited a July 4, 1998, shooting incident on the Fairgrounds resulting in several gunshot wounds and other injuries.
The Ordinance was subject to certain limitations and exceptions. County property *765 did not include any "`local public building'" as defined in Penal Code section 171b, subdivision (c). (Alameda County Gen. Ord.Code, ch. 9.12, § 9.12.120, subd. C.) It exempted from the prohibition various classes of persons, including peace officers, various types of security guards, persons holding valid firearms' licenses pursuant to Penal Code section 12050, and authorized participants "in a motion picture, television, video, dance, or theatrical production or event" under certain circumstances. (Alameda County Gen. Ord.Code, ch. 9.12, § 9.12.120, subd. F.) The Ordinance would have, as one of its chief consequences, the effect of forbidding the presence of firearms at gun shows, such as the Nordykes', thereby making such shows impractical.
To prevent the Ordinance's enforcement, the Nordykes brought suit against Alameda County in the United States District Court for the Northern District of California. The Nordykes applied for a temporary restraining order, claiming that the Ordinance was preempted by state gun regulations and that it violated the First Amendment's free speech guarantee. The district court judge treated the application as one for a preliminary injunction and denied it, finding that the Nordykes had failed to demonstrate probable success on the merits.
The Nordykes then filed an interlocutory appeal in the United States Court of Appeals for the Ninth Circuit, which subsequently certified to us the above question. We granted certification for reasons similar to those stated in the companion case also decided today, Great Western Shows, Inc. v. County of Los Angeles (2002) 27 Cal.4th 853, 118 Cal.Rptr.2d 746, 44 P.3d 120 (Great Western).

II. Discussion
General preemption principles are recapitulated in Great Western, a case addressing whether state law preempts an ordinance banning the sale of guns on county property. We conclude in Great Western that "[a] review of the gun law preemption cases indicates that the Legislature has preempted discrete areas of gun regulation rather than the entire field of gun control." (Great Western, supra, 27 Cal.4th at p. 861, 118 Cal.Rptr.2d 746, 751, 44 P.3d 120, 124.) We further conclude that an ordinance banning the sale of firearms and ammunition on county property, specifically targeted at the gun show held at the Los Angeles County Fairgrounds, is not preempted by state law: it is not expressly preempted by the statutes regulating gun shows, it does not duplicate or contradict such statutes, nor is the manifest legislative intent of these statutes to occupy the field of gun show regulation. With regard to this last point, Great Western applied the traditional three-part test, asking whether "`(1) the subject matter has been so fully and completely covered by general law as to clearly indicate that it has become exclusively a matter of state concern; (2) the subject matter has been partially covered by general law couched in such terms as to indicate clearly that a paramount state concern will not tolerate further or additional local action; or (3) the subject matter has been partially covered by general law, and the subject is of such a nature that the adverse effect of a local ordinance on the transient citizens of the state outweighs the possible benefit to the' locality." (Sherwin-Williams Co. v. City of Los Angeles (1993) 4 Cal.4th 893, 898, 16 Cal.Rptr.2d 215, 844 P.2d 534.)
Applying the above test, we conclude in Great Western (1) that gun show statutes do not clearly indicate that gun show regulation has become exclusively a matter of *766 state concern, but are rather expressly made subject to applicable local laws; (2) that there are significant local interests in gun regulation that the Legislature has not sought to override except in specific areas; and (3) that the ordinance in question did not have substantial impact on transient citizens. (Great Western, supra, 27 Cal.4th at pp. 867-869, 118 Cal.Rptr.2d 746, 756-57, 44 P.3d 129-30.)
We further conclude that under Government Code section 23004, subdivision (d), a county is given substantial authority to manage its property, including the most fundamental decision as to how the property will be used, and that nothing in the gun show statutes evince an intent to override that authority. The gun show statutes do not "mandate that counties use their property for such shows. If the County does allow such shows, it may impose more stringent restrictions on the sale of firearms than state law prescribes." (Great Western, supra, 27 Cal.4th at p. 870, 118 Cal.Rptr.2d 746, 759, 44 P.3d at 120, 131.)
In the present case, the effect on the Nordykes of the Ordinance banning guns on county property is to make gun shows on such property virtually impossible. But as we held in Great Western, such a total ban is within the scope of a county's authority. Nor do the Nordykes contend that the county violated its operating agreement with the Fair Association by enacting the Ordinance.
The Nordykes claim that a number of state statutes that govern the possession of firearms are duplicated or contradicted by the Ordinance. Penal Code section 12025 prohibits possession of concealable firearms, subject to various exceptions. Penal Code section 12031 prohibits the carrying of loaded firearms, again subject to certain exceptions. These statutes criminalize the possession of a concealed and loaded firearm respectively, subject to licensing requirements found in Penal Code sections 12050 and 12051. Thus the state statutes, read together, make it a crime to possess concealed or loaded firearms without the proper license. The Ordinance makes it a misdemeanor to "bring[ ] onto or possess[ ] on county property a firearm, loaded or unloaded, or ammunition for a firearm...." (Alameda County Gen. Ord.Code, ch. 9.12, § 9.12.120, subd. B.) The Ordinance does not duplicate the statutory scheme. Rather, it criminalizes possession of a firearm on county property, whether concealed, loaded or not, and whether the individual is licensed or not. Thus, the Ordinance does not criminalize "`precisely the same acts which are ... prohibited'" by statute (Pipoly v. Benson (1942) 20 Cal.2d 366, 370, 125 P.2d 482) and is therefore not duplicative. (Cf. Cohen v. Board of Supervisors (1985) 40 Cal.3d 277, 292, 219 Cal. Rptr. 467, 707 P.2d 840 [discrete portions of ordinance criminalizing exactly the same conduct as statute duplicative of and preempted by state law].) Put another way, possessing a gun on county property is not identical to the crime of possessing an unlicensed firearm that is concealable or loaded, nor is it a lesser included offense, and therefore someone may lawfully be convicted of both offenses. (See People v. Ortega (1998) 19 Cal.4th 686, 692, 80 Cal.Rptr.2d 489, 968 P.2d 48.)[1]
*767 The Nordykes also claim Penal Code section 171b has a preemptive effect. That statute prohibits the possession of firearms in "any state or local public building or at any meeting required to be open to the public," punishable by a year in county jail or state prison. (Id., subd. (a).) Section 171b, subdivision (b)(7), excepts from the prohibition on gun possession in public buildings "[a] person who, for the purpose of sale or trade, brings any weapon that may otherwise be lawfully transferred, into a gun show conducted pursuant to Sections 12071.1 and 12071.4." or "[a] person who, for purposes of an authorized public exhibition, brings any weapon that may otherwise be lawfully possessed, into a gun show conducted pursuant to Sections 12071.1 and 12071.4." The Nordykes argue that section 171b, subdivision (b)(7) prohibits the county from outlawing possession of guns at gun shows. We disagree. The provision merely exempts gun shows from the state criminal prohibition on possessing guns in public buildings, thereby permitting local government entities to authorize such shows. It does not mandate that local government entities permit such a use, and the Nordykes cite no legislative history indicating otherwise.[2]
The Nordykes point out that the Ordinance is more restrictive than state statutes inasmuch as the latter provide more exceptions to the general prohibition on possession of firearms. For example, under Penal Code section 831.4, a security officer appointed by a sheriff or police chief for the protection of government property may be authorized to carry a firearm. There is no exception in the Ordinance for such security officers. There is also no exception for animal control officers, who may be authorized by their employing agency to use firearms (id., § 830.9), or for officers authorized to transport prisoners, who may carry firearms under certain circumstances (id, § 831.6), or for retired federal law enforcement officers (id, § 12027, subd. (i)).
We first note that the fact that certain classes of persons are exempt from state criminal prosecution for gun possession does not necessarily mean that they are exempt from local prosecution for possessing the gun on restricted county property. But even if we accept the Nordykes' argument that in at least some cases the Legislature meant to preempt local governments from criminalizing the possession of firearms by certain classes of people, that would establish at most that the Ordinance is partially preempted with respect to those classes. Partial preemption does not invalidate the Ordinance as a whole. (See Peatros v. Bank of America (2000) 22 Cal.4th 147, 173, 91 Cal.Rptr.2d 659, 990 P.2d 539 (lead opn. of Mosk, J.) [National Banking Act preempts the state Fair Employment and Housing Act to the extent that the two conflict, but does not to the extent that they do not].) Specifically, such partial preemption would not affect our answer to the question at issue in this litigation: whether a county can prohibit possession of guns at gun shows held on its property. Because we generally accept certified questions only when "answering the question will facilitate the certifying court's functioning or help terminate existing litigation" (Cal. Rules of Court, rule 29.5(f)(2)), and have the discretion to restate the question (id., rule 29.5(g)), we also retain the discretion to decline to address aspects of the certified question that *768 are immaterial to such litigation. Accordingly, we decline to address whether the Ordinance is partially preempted by the above statutes.
In sum, whether or not the Ordinance is partially preempted, Alameda County has the authority to prohibit the operation of gun shows held on its property, and, at least to that extent, may ban possession of guns on its property.
WE CONCUR: GEORGE, C.J., KENNARD, BAXTER, WERDEGAR, and CHIN, JJ.
Dissenting Opinion by BROWN, J.
Alameda County might be able to prohibit gun shows on county property, assuming the property is located within the geographic boundaries of the county and subject to the county's regulatory jurisdiction. (Cf. Great Western Shows, Inc. v. County of Los Angeles (2002) 27 Cal.4th 853, 860-870, 118 Cal.Rptr.2d 746, 750-759, 44 P.3d 120, 124-131.) But the county did not enact a prohibition against gun shows. Instead, the county prohibited, with limited exceptions, the possession of firearms on county property. (Alameda County Gen. Ord.Code, ch. 9.12, § 9.12.120; see maj. opn., ante, 118 Cal.Rptr.2d at p. 764, 44 P.3d at p. 136.) That prohibition conflicts with several state statutes that expressly authorize certain persons to carry firearms without restriction as to place. (See, e.g., Pen.Code, §§ 831.4, subd. (b), 830.9, 831.6, subd. (b), 12027, subd. (i) [provisions authorizing non-peace-officers to carry firearms in certain circumstances]; see also id., §§ 12031, 12050, 12051 [provisions authorizing licensed persons to possess loaded and/or concealable firearms].) Nothing in state law suggests that these authorizations to carry or possess firearms under certain circumstances are subject to local restrictions, and if they were, then a person authorized to carry firearms who happened to be traveling across the state would have to consult legal counsel each time he or she crossed a county line or entered a city, a rule that seems neither practical nor intended by the Legislature. (See Sherwin-Williams Co. v. City of Los Angeles (1993) 4 Cal.4th 893, 898, 16 Cal. Rptr.2d 215, 844 P.2d 534.)
The majority concedes that state law might partially preempt the county ordinance at issue here, but it concludes that the ordinance is enforceable against plaintiffs, because plaintiffs seek only to promote a gun show. The majority, in effect, reasons that, because the county could prohibit gun shows on county property, the county is free to enforce the totally different prohibition at issue hereso long as it does so against a gun show promoter.
The flaw in this logic becomes apparent when we consider a hypothetical involving the constitutional protection of free speech. Suppose the county enacted an ordinance prohibiting any and all speech favoring residential rent controlin other words, a contentbased restriction of political speech that would clearly violate First Amendment principles. A billboard company seeks to display billboard advertisements promoting rent control and challenges the ordinance on First Amendment grounds. In those circumstances, I doubt the majority would hold that, because the county is free to regulate billboard advertising (see City Council v. Taxpayers for Vincent (1984) 466 U.S. 789, 806-807, 104 S.Ct. 2118, 80 L.Ed.2d 772; Metromedia, Inc. v. Sayi Diego (1981) 453 U.S. 490, 507-512, 101 S.Ct. 2882, 69 L.Ed.2d 800; City and County of San Francisco v. Eller Outdoor Advertising (1987) 192 Cal.App.3d 643, 658-661, 237 Cal.Rptr. 815), it can enforce its unconstitutional restriction of speech against the billboard company. Rather, the majority would likely hold that the ordinance exceeds the county's regulatory authority under *769 the state and federal Constitutions. Put another way, the question before us is not whether the county might be able to enact some hypothetical ordinance prohibiting what plaintiffs want to do. The question is whether the ordinance the county actually enacted exceeds the county's authority, which it does.
Significantly, this case is not one in which we are asked to enforce an independent provision in an ordinance after severing a preempted provision. (See, e.g., Cohen v. Board of Supervisors (1985) 40 Cal.3d 277, 292, 219 Cal.Rptr. 467, 707 P.2d 840.) Rather, the provision that the majority enforcesthe prohibition against possessing firearms on county property is the same provision that conflicts with state law. Nor is this a case where the ordinance is ambiguous and might be construed narrowly so as to avoid preemption problems. (See, e.g., In re Cox (1970) 3 Cal.3d 205, 220, fn. 18, 90 Cal.Rptr. 24, 474 P.2d 992.) No one could reasonably construe a general prohibition against firearm possession to refer only to gun shows, and no one reading the ordinance without the benefit of a law degree and a careful study of our decisions would guess that the ordinance merely refers to gun shows.
In short, we consider here a local restriction on firearm possession that directly conflicts with state law. The majority seeks to avoid the obvious preemption problem by the expedient of rewriting the ordinance to prohibit gun shows instead of gun possession. Alameda County might have enacted an ordinance prohibiting gun shows, but it did not, and the ordinance it did enact exceeds its regulatory authority.
The majority attempts to make the issue quite small, involving a restriction applicable only to county property (maj. opn., ante, 118 Cal.Rptr.2d at p. 767, 44 P.3d at p. 138); the litigants, on the other hand, insist the stakes are large. It does not matter whether the issue is large or small, though, if the government exceeds its authority. As Judge Kozinski has noted, the small and superficially benign acts of a democratic government can erode personal freedom just as surely, and to the same end, as the large and malignant acts of a tyrant or dictator: "Libertythe freedom from unwarranted intrusion by government is as easily lost through insistent nibbles by government officials who seek to do their jobs too well as by those whose purpose it is to oppress...." (U.S. v. $124,570 U.S. Currency (9th Cir.1989) 873 F.2d 1240, 1246.) Because the ordinance conflicts with state law and because I believe the structural constraints on government authority are equally as important as the substantive ones, I dissent.
NOTES
[1] The dissent contends that Penal Code sections 12031, 12050, and 1251 conflict with the Ordinance, apparently based on the presumption that these and other state statutes preempt the field of gun possession to such an extent that they impliedly prohibit counties from regulating gun possession on their own property. As explained more fully in Great Western, however, the Legislature has not indicated an intent to so broadly preempt the field of gun regulation. (See also Pen.Code, § 12050, subd. (b) [gun licensing subject to reasonable local time, place, and manner restrictions].)
[2] As noted, the Ordinance specifically exempts from its purview all "`local public building[s],'" as defined in Penal Code section 171b, subdivision (c). (Alameda County Gen. Ord.Code, ch. 9.12, § 9.12.120, subd. C.) The meaning of this exemption, which is debated by the parties, is not included in the certified question and we express no opinion on this matter.