Filed 7/15/13; pub order 8/2/13 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| CALGUNS FOUNDATION, INC., et al.,<br><br>　　　Plaintiffs and Appellants,<br><br>v.<br><br>COUNTY OF SAN MATEO,<br><br>　　　Defendant and Respondent. | A136092<br><br>(San Mateo County<br>Super. Ct. No. CIV509185) |

## I. INTRODUCTION

In 2011, appellant Calguns Foundation, Inc. (Calguns) and two individual members (one its Chairman) filed an injunctive and declaratory relief action seeking a judgment declaring that a San Mateo County ordinance which precludes the possession and use of guns in the county's parks and recreational areas is preempted by state law, and hence enjoining enforcement of that ordinance. After briefing and argument, the trial court sustained the County's demurrer to the complaint and entered a judgment of dismissal. We affirm that judgment.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Appellants' complaint, filed on October 20, 2011, sought "Injunctive/Declaratory Relief" from the trial court and stated that the "policies, procedures and practices of the"

County in administering San Mateo County Ordinance No. 3.68.080[1] "is preempted by State law," specifically former Penal Code section 12050 (now section 26150.)[2]

Ordinance No. 3.68.080, the relevant portion of which was originally enacted in 1934, now provides in relevant part: "(o) Firearms and Dangerous Weapons. Except as provided in subsection (p) and subsection (q), no person shall have in his possession within any County Park or Recreation area, or on the San Francisco Fish and Game Refuge, and no person shall fire or discharge, or cause to be fired or discharged, across, in, or into any portion of any County Park or Recreation area, or on the San Francisco Fish and Game Refuge, any gun or firearm, spear, bow and arrow, cross bow, slingshot, air or gas weapon or any other dangerous weapon. [¶] (p) Shooting Ranges. The discharge or firing of firearms is permitted in areas designated by the Parks and Recreation Commission, or San Francisco Water Department, specifically for the purposes of rifle and/or pistol and/or shotgun shooting, and the transportation of such firearms through the County Park or Recreation area, or on the San Francisco Fish and Game Refuge, in which said area(s) is/are located is permitted providing said firearms are unloaded. 'Unloaded' shall mean that there is no ammunition in either the chamber or magazine of the gun."[3]

As noted above, appellants' complaint asserted that the predecessor section to the current section 26150[4] (former section 12050, subdivision (a)(1)(A) & (D)) preempted that ordinance "to the extent [the ordinance] does not provide an exception for persons licensed to carry a firearm . . . ."

---

[1] All further unspecified references to ordinances are to San Mateo County ordinances.

[2] All further statutory references are to the Penal Code, unless otherwise noted.

[3] Subsection (q) of the ordinance provides an exception, not relevant here, pertaining to the use of certain archery articles, i.e., bow and arrows.

[4] The currently applicable statute was misidentified in appellants' complaint as "section 25650."

That statute provides in relevant part: "(a) When a person applies for a license to carry a pistol, revolver, or other firearm capable of being concealed upon the person, the sheriff of a county may issue a license to that person upon proof of all of the following: [¶] (1) The applicant is of good moral character. [¶] (2) Good cause exists for issuance of the license. [¶] (3) The applicant is a resident of the county or a city within the county, or the applicant's principal place of employment or business is in the county or a city within the county and the applicant spends a substantial period of time in that place of employment or business. [¶] (4) The applicant has completed a course of training as described in Section 26165." (§ 26150.)

As noted above, appellants' complaint sought a declaration that Ordinance No. 3.68.080, subsections (o) and (p), "is preempted by state law and therefore void" to the extent "it does not provide an exception for persons licensed to carry a firearm" under current section 26150. It also sought injunctive relief consistent with that declaratory relief, relief which "would include but be limited to a moratorium on enforcement of [Ordinance No. 3.68.080] and/or certain provisions."

Respondent County of San Mateo (County) filed a demurrer to appellants' complaint on December 15, 2011. Appellants filed an opposition to that demurrer on April 5, 2012,[5] and the County its reply on April 17. During the course of that briefing, appellants changed their position regarding the statute they contended preempted the relevant County ordinance. As noted, such was originally alleged to be former section 12050, now section 26150, but in their opposition to the County's demurrer, appellants changed their argument, and contended that the preempting statute was Government Code section 53071 (a statute to be discussed further below).

The trial court heard oral argument on the matter on April 24, and continued the matter for further briefing. Supplemental briefs were submitted by both parties on, respectively, May 18 and June 4. On July 10, the trial court entered its order sustaining

---

[5] All further dates noted are in 2012.

County's demurrer without leave to amend, and entered judgment for the County. Appellants filed a timely notice of appeal on July 31.

After the parties completed their briefing on the appeal, the National Rifle Association (NRA) filed an application to file an amicus curiae brief in support of appellants' position together with such a brief. We granted that application and, as noted below, have also considered the NRA's arguments in opposition to the ruling of the trial court and in favor of the contention that the San Mateo County ordinance is either expressly or impliedly preempted by state law.

### III. DISCUSSION

Simply stated, the issue before us is whether the trial court was correct in its ruling that there is no state statute which preempts ordinances such as Ordinance No. 3.68.080, subsections (o) and (p), or any other similar county ordinances.[6] We hold that it was.

As our colleagues in the Third District summed up this issue just a few months ago: " 'A county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws.' (Cal. Const., art. XI, § 7.) 'The first step in a preemption analysis is to determine whether the local regulation explicitly conflicts with any provision of state law. [Citation.]' [Citation.] . . . [¶] 'The party claiming that general state law preempts a local ordinance has the burden of demonstrating preemption. [Citation.]' (*Big Creek Lumber Co. v. County of Santa Cruz* (2006) 38 Cal.4th 1139, 1149 (*Big Creek Lumber Co.*).) There is a particular

---

[6] In their filings below and their briefs to us, the parties note that very similar ordinances are found in many California counties and cities. Thus, the County specifically requested the trial court to take judicial notice of similar ordinances in Santa Clara and Los Angeles Counties and the City of Daly City, but it declined to do so. Further, in an appendix to their opening brief in this court, appellants suggest that a ruling in their favor could well invalidate similar ordinances in over half of California's 58 counties.

The County has requested this court to take judicial notice of the Santa Clara County, Los Angeles County, and Daly City ordinances, as well as the original, i.e., 1934, ordinance of San Mateo County. Appellants have not opposed this request, and we hereby grant it.

reluctance to find preemption of a local regulation covering an area of significant local interest that differs from one locality to another, such as land use regulation. (*Big Creek Lumber Co.*, *supra,* 38 Cal.4th at p. 1149.) 'The presumption against preemption accords with our more general understanding that "it is not to be presumed that the [L]egislature in the enactment of statutes intends to overthrow long-established principles of law unless such intention is made clearly to appear either by express declaration or by necessary implication." [Citations.]' (*Big Creek Lumber Co., supra*, at pp. 1149-1150.)." (*Browne v. County of Tehama* (2013) 213 Cal.App.4th 704, 718-719 (*Browne*).)

In two cases decided the same day in 2002, our Supreme Court applied these principles to the state regulation of guns and their possession and usage versus similar regulation by counties. Those cases are *Great Western Shows, Inc. v. County of Los Angeles* (2002) 27 Cal.4th 853 (*Great Western*) and *Nordyke v. King* (2002) 27 Cal.4th 875 (*Nordyke*), both six-to one decisions.

In *Great Western*, the court had been presented with two questions by the Ninth Circuit Court of Appeals. Those questions and the court's answers to them were summed up in the opening paragraphs of the court's opinion:

"1. Does state law regulating the sale of firearms and gun shows preempt a county ordinance prohibiting gun and ammunition sales on county property?

"2. May a county, consistent with article XI, section 7 of the California Constitution, regulate the sale of firearms on its property located in an incorporated city within the borders of the county?

"The first question may be rephrased as follows: Does state law compel counties to allow their property to be used for gun shows at which guns and ammunition are sold? We conclude that it does not.

"We further conclude that a county may regulate the sale of firearms on its property located in a city when, as here, the county ordinance does not conflict with city law." (*Great Western, supra,* 27 Cal.4th at p. 858.)

The court explained its answers to these questions by, first, addressing the issue of "*State Law Preemption in General and as Applied to Gun Control*." (*Great Western,*

*supra,* 27 Cal.4th at p. 860.) In so doing, it first quoted from a 1969 decision in which it had, generally, outlined when, as and if local ordinances enacted by cities or counties may be preempted by state law, *Galvan v. Superior Court* (1969) 70 Cal.2d 851 (*Galvan*). It summarized its holding of that case thusly: "A review of the gun law preemption cases indicates that the Legislature has preempted discrete areas of gun regulation rather than the entire field of gun control." (*Great Western, supra,* at p. 861.) The court then went on to explain that, in *Galvan,* it had not found any "preemption by implication" according to the test explaining that concept enunciated in another of its earlier cases. "We concluded [in *Galvan*] that the San Francisco registration law was not preempted by state law." (*Great Western* at pp. 861-862.)[7]

The court then summarized several appellate court cases that had addressed this issue, two of which ruled against any preemption[8] and one of which found a restrictive San Francisco firearm ordinance to be preempted.[9] It then summarized its key holding

---

[7] In *Galvan*, a unanimous Supreme Court rejected an attack on a San Francisco ordinance requiring the registration of all firearms. It ruled that nothing in California statutes either expressly or by implication preempted such an ordinance. (See *Galvan, supra,* 70 Cal.2d at pp. 855-866.) After the decision in *Galvan*, the Legislature enacted former Government Code section 9619, now Government Code section 53071, to be discussed further below.

[8] These two decisions, both of which were cited approvingly by the *Great Western* court, are *California Rifle & Pistol Assn. v. City of West Hollywood* (1998) 66 Cal.App.4th 1302 (*CRPA*) and *Suter v. City of Lafayette* (1997) 57 Cal.App.4th 1109 (*Suter*), a decision by our colleagues in Division One of this court. Both rejected claims that state law preempted local ordinances regarding gun control. The *CRPA* court specifically "upheld a municipal ordinance banning the sale of so-called Saturday Night Specials" while the *Suter* court upheld a "city's ability to confine firearms dealerships to certain commercially zoned areas," but struck down a "provision regarding firearms storage covered by the detailed provisions" of former section 12071, subdivision (b)(14). (*Great Western, supra,* 27 Cal.4th at p. 863.) Interestingly, neither *CRPA* nor *Suter* are cited much less discussed in either appellants' or the NRA's briefs to us.

[9] This case was *Doe v. City and County of San Francisco* (1982) 136 Cal.App.3d 509 (*Doe*), a case holding that a San Francisco City ordinance which directly addressed "local licensing requirements." (*Great Western, supra,* 27 Cal.4th at p. 864). The only other California appellate case finding state law preemption regarding the regulation of firearms is a decision of this court, *Sippel v. Nelder* (1972) 24 Cal.App.3d 173 (*Sippel*), in

thusly: "In sum, a review of case law and the corresponding development of gun control statutes in response to that law demonstrates that the Legislature has chosen not to broadly preempt local control of firearms but has targeted certain specific areas for preemption." (*Great Western, supra,* 27 Cal.4th at p. 864.)

The *Great Western* court then turned to the narrower issues framed by the Ninth Circuit, i.e., state law preemption as applied to gun shows and whether a county is allowed to regulate the sale of firearms on its property located within the borders of the city. We need not delve into the bases of the court's conclusions on these issues but, as noted by its answers to the Ninth Circuit quoted above, it concluded that state law did not compel counties to allow their property to be used for gun shows and that a county may regulate the sale of firearms on its property located within a city when the county ordinance did not conflict with city law. (*Great Western, supra,* 27 Cal.4th at pp. 864-873.)

As noted earlier, the same day it decided *Great Western*, the court also published its decision in *Nordyke* in which it addressed another question posed to it by the Ninth Circuit, i.e.: "Does state law regulating the possession of firearms and gun shows preempt a municipal ordinance prohibiting gun possession on county property." The court again answered this question in the negative, stating: "We conclude that the municipal ordinance in question [one enacted in Alameda County], insofar as it concerns gun shows, is not preempted." (*Nordyke, supra,* 27 Cal.4th at p. 880.)

The *Nordyke* court then briefly summarized its holdings in *Great Western* including one which is highly relevant to the issue before us here: "[T]here are significant local interests in gun regulation that the Legislature has not sought to override except in specific areas." (*Nordyke, supra,* 27 Cal.4th at p. 882.) The court then rejected

_____

which we found that the predecessor section to Government Code section 53071, i.e., the statute enacted after the Supreme Court's decision in *Galvan,* "effectively eliminated any doubt as to the legislative intent to occupy the entire field of registration and licensing of firearms," and thus invalidated San Francisco ordinances prohibiting the purchase of a concealable firearm by an unlicensed person. (*Sippel, supra,* 24 Cal.App.3d at p. 176.)

several arguments put forward by appellants Nordyke, promoters of gun shows, as to why the Alameda County ordinance at issue was preempted by state law. It concluded by stating that "whether or not the [Alameda County] Ordinance is partially preempted, Alameda County has the authority to prohibit the operation of gun shows held on its property, and, at least to that extent, may ban possession of guns on its property." (*Id.* at p. 885.)[10]

In their briefs to us, appellants and the NRA contend that the state laws that effect a preemption of the San Mateo County ordinance are sections 26150 et seq. and Government Code section 53071.[11] However, in support of its preemption argument, the NRA relies significantly more than appellants on sections 26150 and the succeeding statutes, which it characterizes as the "Carry License" laws.

Section 26150 states in pertinent part: "(a) When a person applies for a license to carry a pistol, revolver, or other firearm capable of being concealed upon the person, the sheriff of a county may issue a license to that person upon proof of all of the following: [¶] (1) The applicant is of good moral character. [¶] (2) Good cause exists for issuance of the license. [¶] (3) The applicant is a resident of the county or a city within the county, or the applicant's principal place of employment or business is in the county or a city within the county and the applicant spends a substantial period of time in that place of

---

[10] The holdings of *Great Western, Nordyke, CRPA,* and *Suter* are generally consistent with the holdings of other state appellate courts. (See Annot., Validity, Construction, and Application of Municipal Restrictions on Location or Operations of Facilities for Sale or Use of Firearms (2006) 19 A.L.R.6th 335, §§ 18 & 19.) Additionally, the Ninth Circuit Court of Appeals has upheld the same San Mateo County ordinance considered in *Nordyke* against challenges to it based on various federal constitutional grounds. (See *Nordyke v. King* (9th Cir. 2003) 319 F.3d 1185 and *Nordyke v. King* (9th Cir. 2011) 644 F.3d 776.)

[11] Another statute cited and discussed by appellants—and, albeit very briefly, by the County—is the "Gun-Free School Zone Act," found at section 626.9, i.e., in a chapter of the Penal Code relating to "Schools." This statute's prohibitions—and exceptions thereto—regarding the possession of guns on school grounds has little if any relevance to this case.

employment or business. [¶] (4) The applicant has completed a course of training as described in Section 26165."

Following this section is a statute giving essentially the same permission to municipal authorities (section 26155) and others relevant to the length of the validity of the license and the maintenance of records relating thereto (sections 26220 and 26225). Especially important is section 26200, subdivision (a), which provides:

"A license issued pursuant to this article may include any reasonable restrictions or conditions that the issuing authority deems warranted, including restrictions as to the time, *place, manner, and circumstances under which the licensee may carry a pistol, revolver, or other firearm capable of being concealed upon the person*." (§ 26200, subd. (a), italics added.)[12]

In its initial argument regarding preemption, the NRA contends that there "is no exception in the challenged ordinance for persons who have been issued a license to carry a concealed firearm . . . ." It continues: "[W]hile a local government might be allowed to require Carry License holders to comply with rules when carrying a firearm in its parks, the County may not prohibit Appellant from carrying a firearm pursuant to his state-issued license in local areas altogether."

We disagree, for several reasons. First of all, the statute mainly relied on by the NRA, section 26150, specifically states that the county sheriff "may" issue a license to an applicant. Further, section 26200 makes very clear that an issued license "may include any reasonable restrictions or conditions" regarding when and where a licensee may carry his weapon. Under these sections, the sheriff clearly has " 'extremely broad discretion' . . . concerning the issuance of concealed weapons licenses . . . ." (*Gifford v. City of Los Angeles* (2001) 88 Cal.App.4th 801, 805.) That being the case, it logically follows that the employer and supervisor of the sheriff, i.e., the County Board of

---

[12] Section 26200, subdivision (b), requires that any imposed restrictions "shall be indicated on any license issued."

Supervisors, also has the authority to provide, via its legislative process, for exceptions and conditions to when and where an issued "Carry License" may be validly used.

But the NRA argues that "[i]f local governments, rather than issuing sheriffs or chiefs of police, are permitted to enact further restrictions on Carry Licenses, visiting Carry License holders will be confronted with a patchwork quilt of different firearm restrictions each time they enter another jurisdiction to enjoy the county parks. . . . To prevent widespread confusion, any time, place and manner restriction must be on the face of the issued Carry License, Penal Code section 26200, subdivision (b), not simply within the code books of the various cities and counties. That way, each licensee knows precisely which restrictions affect his or her Carry License."

Regarding this preemption argument, the *Nordyke* court addressed the issue of whether section 26150 (then section 12050) preempted the Alameda County ordinance at issue in that case. It specifically held that it did not, stating: "The dissent contends that Penal Code sections 12031, 12050, and 12051 conflict with the ordinance, apparently based on the presumption that these and other state statutes preempt the field of gun possession to such an extent that they impliedly prohibit counties from regulating gun possession on their own property. As explained more fully in *Great Western*, however, the Legislature has not indicated an intent to so broadly preempt the field of gun regulation. (See also Pen. Code, § 12050, subd. (b) [gun licensing subject to reasonable local time, place, and manner restrictions].)." (*Nordyke, supra,* 27 Cal.4th at p. 883, fn. 1.)[13]

We believe the holdings, and the specific statements explaining those holdings, in both *Great Western* and *Nordyke* defeat appellants' and the NRA's preemption argument

---

[13] The NRA dismisses this statement from *Nordyke* as "little more than footnoted dicta." We disagree; via that footnote, the majority of the court was responding to a very specific contention of dissenting Justice Brown as to the preemptive effect of (along with other statutes) former section 12050 (current section 26150). Its response was clear and two-fold: (1) the Legislature's lack of intent to "broadly preempt" county gun regulation and (2) the specific language of current section 26200 (former section 12050, subd. (b)), regarding "reasonable time, place and manner restrictions" on gun possession and use.

insofar as such is based on former section 12050, subdivision (a) (current section 26150). First of all, in its amicus brief to us, the NRA commences its arguments in favor of preemption by rather notably not citing, much less discussing or analyzing, the holdings in *Great Western* or *Nordyke* and, instead, basing their argument on cases involving state versus local legislation involving totally different subject matters, e.g., the forfeiture of vehicles used to commit criminal acts, the regulation of aerosol paint containers, and the restrictions which might be imposed on the issuance of contractors' licenses. (See, respectively, *O'Connell v. City of Stockton* (2007) 41 Cal.4th 1061; *Sherwin-Williams Co. v. City of Los Angeles* (1993) 4 Cal.4th 893, and other cases cited by the NRA.) But, as the statements quoted above from *Galvan, Great Western* and *Nordyke* make clear, that court has determined that "the Legislature has chosen not to broadly preempt local control of firearms but has targeted certain specific areas for preemption" and that "there are significant local interests in gun regulation that the Legislature has not sought to override except in specific areas." (Respectively, *Great Western, supra,* 27 Cal.4th at p. 864 and *Nordyke, supra,* 27 Cal.4th at p. 882.)[14]

The NRA's principal argument in favor of preemption is that "California law establishes a process in Penal Code sections 26150 through 26225 for obtaining a Carry License from the sheriff or chief of police of one's respective city, city and county, or county. This broad and comprehensive Carry Licensing scheme . . . is strong evidence that the state intended to occupy the field of Carry License regulation, foreclosing future local action." As a result, the NRA concludes, "the state has impliedly occupied the entire field of Carry License issuing and regulation and County Ordinance section 3.68.080 is thus preempted by state law."

We disagree, and do so for the reasons stated in *Nordyke*, where the court explicitly rejected the contention that these same statutes "preempt the field of gun possession to such an extent that they impliedly prohibit counties from regulating gun

[14] The NRA does not cite or discuss either of these cases until the final pages of its amicus brief, where it attempts to distinguish them as applicable entirely to "gun shows" and similar "commercial activities" relating to guns.

possession on their own property.  As explained more fully in *Great Western*,  however, the Legislature has not indicated an intent to so broadly preempt the field of gun regulation." (*Nordyke, supra,* 27 Cal.4th at p. 883, fn. 1; see also § 26200, subd. (a).)

Additionally, much earlier than its holdings in *Great Western* and *Nordyke*, our Supreme Court flatly rejected the argument that the NRA makes in its brief to us, i.e., that the substantial number of "Carry License" state laws impliedly preempts any and all additional regulation by California counties or cities.  In its decision in *Galvan*, a unanimous court stated:  "The fact that there are numerous statutes dealing with guns or other weapons does not by itself show that the subject of gun or weapons control has been completely covered so as to make the matter one of exclusive state concern.  [¶] To approach the issue of preemption as a quantitative problem provides no guidance in determining whether the Legislature intends that local units shall not legislate concerning a particular subject, and further confounds a meaningful solution to preemption problems by offering a superficially attractive rule of preemption that requires only a statutory nosecount." (*Galvan, supra,* 70 Cal.2d at p. 861, fn. omitted.)

As noted above, the *Galvan* decision led to the enactment of the predecessor statute to what is now Government Code section 53071.  In their response to the County's demurrer and supporting memorandum, appellants shifted their position in the trial court and argued that, although never cited in their complaint, that law was now the preempting statute.  That statute reads as follows:

"It is the intention of the Legislature to occupy the whole field of regulation of the registration or licensing of commercially manufactured firearms as encompassed by the provisions of the Penal Code, and such provisions shall be exclusive of all local regulations, relating to registration or licensing of commercially manufactured firearms, by any political subdivision as defined in Section 1721 of the Labor Code." (Gov. Code § 53071.)

Appellants specifically contend that this statute preempts Ordinance No. 3.68.080 under the holding of Division Four of this court in *Fiscal v. City and County of San*

*Francisco* (2008) 158 Cal.App.4th 895 (*Fiscal*). Amicus NRA agrees with this contention.

In *Fiscal,* the court affirmed a decision of the San Francisco Superior Court which had ruled that a San Francisco ordinance which totally prohibited the possession and sale of handguns within the city was preempted by state law. Its opinion described the ordinance at issue thusly: "With narrow exceptions, Section 3 of Prop. H bans the *possession* of handguns by San Francisco residents, including handgun possession within the sanctity of homes, businesses, and private property." (*Fiscal, supra,* 158 Cal.App.4th at p. 906.) On the basis of former section 12026, subdivision (b),[15] and Government Code section 53071—principally the latter—Division Four ruled that this ordinance was preempted. (*Fiscal* at pp. 906-919.)

However, the *Fiscal* court made clear that it was so ruling because of the extreme breadth of the ordinance being challenged. It first considered section 3 of the ordinance, which addressed the *possession* of handguns.[16] As to that prohibition, it stated: "The broad language of Government Code section 53071, prohibiting 'all local regulations, *relating* to registration or licensing' of firearms, indicates that the state has an interest in statewide uniformity of handgun licensing. (Italics added.) In finding Government Code section 53071 expressly preempted Prop. H, the trial court pointed out that the ordinance had the practical effect of 'revoking or otherwise invalidating existing state licenses,' including those permitting the possession of handguns. The trial court went on to conclude that '[a] local regulation that invalidates existing licenses, but does not

---

[15] Now section 25605, subdivision (b). This statute provides one (of several) exceptions to section 25400's prohibition against "carrying a concealed firearm." (§ 25400, subd. (a).) Specifically, it provides that a permit or license is not necessary regarding anyone who purchases, owns, possesses, etc., "a handgun within the citizen's or legal resident's place of residence, place of business, or on private property owned or lawfully possessed by the citizen or legal resident." (§ 25605, subd. (b).) Neither appellants nor the NRA cite, must less rely upon, this statute in their briefs to us.

[16] In later sections of its decision, the *Fiscal* court addressed other issues presented by the San Francisco ordinance (but not involved here), namely the sale, manufacture, and distribution of handguns. (See *Fiscal, supra,* 158 Cal.App.4th at pp. 911-918.)

affirmatively create new licensing schemes, "relates" to the state's regulatory scheme of licensing firearms' and, consequently, is expressly preempted by Government Code section 53071. We agree. [¶] While the City emphatically argues that Prop. H is a proper response to crime because it is aimed at criminals who use handguns in the commission of their unlawful acts, the City's arguments fail to acknowledge that the ordinance will affect more than just criminals. It will also affect every City resident who has not, through some demonstration of personal disability or irresponsibility, lost his or her right to possess a handgun. Although a precise assessment of the impact of this ordinance is difficult to gauge because the ordinance has never been enforced, at a minimum, section 3 of Prop. H would invalidate all licenses possessed by City residents to carry a concealed weapon issued under Penal Code section 12050, and it would prohibit the possession of handguns by City residents even if those residents are expressly authorized by state law to possess handguns for self-defense or other lawful purposes. [¶] If the preemption doctrine means anything, it means that a local entity may not pass an ordinance, the effect of which is to completely frustrate a broad, evolutional statutory regime enacted by the Legislature. Section 3 of Prop. H stands as an obstruction to the accomplishment and execution of the full purposes and objectives of the legislative scheme regulating handgun possession in this state. For that further reason, it is preempted." (*Fiscal, supra,* 158 Cal.App.4th at pp. 910-911.)

Later in its opinion, after dealing with issues not relevant here, i.e., the ordinance's ban on gun sales, etc., the *Fiscal* court concluded: "We, therefore, affirm the trial court's conclusion that Prop. H is invalid as preempted by state law. As the City repeatedly emphasizes, the statutes governing firearms have been 'carefully worded to avoid any broad preemptive effect.' [Citation.] Nevertheless, the sheer breadth of Prop. H makes it vulnerable to a preemption challenge. As already noted, Section 2 of Prop. H bans the '*sale*, manufacture, transfer or distribution' of ammunition and firearms in the City, without exception. (Italics added.) With narrow exceptions, Section 3 bans the *possession* of handguns by San Francisco residents, including possession within the sanctity of homes, businesses, and private property. (Italics added.) [¶] We wish to

stress that the goal of any local authority wishing to legislate in the area of gun control should be to accommodate the local interest with the least possible interference with state law. As we have seen, while courts have tolerated subtle local encroachment into the field of firearms regulation (*CRPA, Great Western, Nordyke*), laws which significantly intrude upon the state prerogative have been uniformly struck down as preempted. (*Doe, Sippel.*)" (*Fiscal*, *supra,* 158 Cal.App.4th at p. 919, fn. omitted.) [17]

In so ruling, however—and as both appellants and amicus NRA fail to acknowledge—the *Fiscal* court made clear that it well understood the rulings made by our Supreme Court in *Great Western* and *Nordyke*, and carefully explained why those rulings did not apply to the facts before it; it stated: "These cases are palpably distinguishable from the case before us. In deciding *Great Western* and *Nordyke*, our Supreme Court was careful to confine its preemption analysis to the question of whether state law authorizing gun shows necessarily compelled counties to allow their property to be used for this purpose. [Citations.] The court found that there was acceptable interplay between the local government's exercise of its power to control the use of its property and the state government's regulation of gun shows to permit local governments to ban the sale of firearms and ammunition at gun shows on county-owned public property. [Citations.] Neither case can be properly read to extend that limited preemption inquiry to a case such as this one involving a local government's attempt to enact an absolute and total ban of firearm and ammunition sales on all property, public and private, within its

---

[17] The NRA's amicus brief quotes these sentences from Division Four's opinion in *Fiscal*, and then adds this final sentence from that opinion: "Therefore, when it comes to regulating firearms, local governments are well advised to tread lightly." (Italics omitted, see *Fiscal, supra,* 158 Cal.App.4th at p. 919, citing Gorovitz, *California Dreamin': The Myth of State Preemption of Local Firearm Regulation* (1996) 30 U.S.F. L.Rev. 395.) If, by this citation, the NRA is suggesting that the cited 1996 law review article supports its preemption argument, it is quite wrong; although written many years before most of the authorities discussed above were decided, the article makes quite the contrary contention. (See especially, 30 U.S.F. L.Rev. at pp. 414-426.) Further, and as noted above, recent secondary authority establishes that, nationally, local efforts at firearm regulation have generally been held not to be preempted by state statutes. (See 19 A.L.R.6th 335, §§ 18 & 19.)

geographic jurisdiction. [¶] In conclusion, we find the situations presented in *CRPA, supra*, 66 Cal.App.4th 1302, *Great Western, supra*, 27 Cal.4th 853, and *Nordyke, supra*, 27 Cal.4th 875, are so different from those presented in this case as to make them inapposite here." (*Fiscal, supra,* 158 Cal.App.4th at pp. 917-918.)

For exactly the reasons articulated in *Fiscal*, its ruling and the statute it (and appellants here) principally relied upon, Government Code section 53071, do not govern in this case. To the contrary, the rulings of our Supreme Court in *Great Western* and *Nordyke* and the rulings of our sister courts in *CRPA* and *Suter* do. This is so for the following several reasons:

First, and as our Supreme Court made clear in *Big Creek Lumber*, a party asserting that a " 'state law preempts a local ordinance has the burden of demonstrating preemption. [Citation.]' There is a particular reluctance to find preemption of a local regulation covering an area of significant local interest that differs from one locality to another, *such as land use regulation*." (*Browne, supra,* 213 Cal.App.4th at p. 719, italics added; see also *Great Western, supra,* 27 Cal.4th at pp. 866-867, *Galvan, supra,* 70 Cal.2d at pp. 862-866; *Fisher v. City of Berkeley* (1984) 37 Cal.3d 644, 704-709.) Appellants have not come close to satisfying that burden here, especially since we are dealing with a county ordinance that does, indeed, deal with "land use regulation." (*Brown* at p. 719.)

Second, as our colleagues in Division One made clear in *Suter*: "Whether the state law has preempted Lafayette's local laws depends on whether there is legislation prohibiting local governments from requiring local licenses or permits from persons wishing to sell, lease or transfer firearms, or an expression by the Legislature of its intent to fully occupy that field." (*Suter, supra,* 57 Cal.App.4th at p. 1119.) This statement was followed by a highly relevant footnote which reads: "It could be, and has been, argued that Government Code section 53071 is itself an expression of intent to occupy the whole field of firearm regulation. However, the cases uniformly construe state regulation of firearms narrowly, finding no preemption of areas not specifically addressed by state law. (E.g., *Galvan*[*, supra*,] 70 Cal.2d 851 [legislation prohibiting licensing of firearms does

not preclude local government from registering firearms]; *Olsen v. McGillicuddy* (1971) 15 Cal.App.3d 897 [(*Olsen*)] [legislation preempting area of licensing and registration of firearms does not preempt local government from regulating the use of firearms]; *Doe*[, *supra*,] 136 Cal.App.3d [at p.] 516 [legislative response to case law suggests 'that the Legislature has not prevented local governmental bodies from regulating all aspects of the possession of firearms.'].)" (*Suter, supra,* 57 Cal.App.4th at p. 1120, fn. 2.) A few years later, citing this footnote and, of course, the core holding of *Suter*, a division of the Second District held to the same effect in a case involving a city ordinance banning the sale of "Saturday Night Specials." (See *CRPA, supra,* 66 Cal.App.4th at pp. 1311-1321.)

Third, the scope of the San Mateo County ordinance at issue here is very narrow: the carrying, firing, or discharge of "any gun or firearm . . . or any other dangerous weapon" within "any County Park or Recreation area, or the San Francisco Fish and Game Refuge" except for areas "designated by the Parks and Recreation Commission, or the San Francisco Water Department . . . for the purposes of rifle and/or pistol and/or shotgun shooting" is prohibited.

This ordinance clearly bears no resemblance to the broad San Francisco ordinance struck down by the court in *Fiscal* for the obvious reason, among others, that it pertains only to specific areas within the county, and areas patently subject to the governance of the County's Board of Supervisors, i.e., its parks and recreation areas. Such is exactly the sort of narrow regulation upheld against a claim of state law preemption in *Suter*. (See *Suter, supra,* 57 Cal.App.4th at pp. 1118-1122.) As our Supreme Court made clear in *Nordyke*: "Alameda County has the authority to prohibit the operation of gun shows on its property. . . ." (*Nordyke, supra,* 27 Cal.4th at p. 885.) If that is true, then clearly San Mateo County has the authority to prohibit the use of guns on specific portions of its property, too, i.e., its designated parks and recreation areas.[18]

---

[18] For this—among others noted above—we reject appellants' contention that the ordinance they are challenging was a "dumb idea."

Fourth and finally, the statute appellants rely upon in their preemption argument simply does not apply to the issue of *where* gun owners may carry and use their weapons. Government Code section 53071, quoted in full above, regulates *only* "the registration or licensing of commercially manufactured firearms." (Gov. Code, § 53071.) In its single sentence, it says nothing at all about anything other than that narrow subject.

Indeed, precisely this was the basis for the trial court's ruling granting the County's demurrer; in that ruling, the court (Judge V. Raymond Swope, III) stated: "The language of the statute [Government Code section 53071] indicates the legislature intends to occupy the field of regulation of the registration or licensing of commercially manufactured firearms. Nothing on the face of the subject ordinance purports to regulate registration or licensing of any firearm. It merely prohibits the possession of firearms on specified county property. Plaintiffs' reliance on *Fiscal* is misplaced as it is factually distinct. In that case, the finding of preemption was based on the fact that the ordinance imposed a total ban on the possession of handguns within the City and County of San Francisco. As a result, it had the practical effect of revoking or invalidating existing licenses. In this case the ordinance does not have the effect of invalidating any licenses. It merely regulates the possession or use of firearms on county property."

We agree with the trial court. Under the scope of firearm-regulation preemption articulated by our Supreme Court's holdings in *Great Western* and *Nordyke*, Government Code section 53071 cannot be construed as precluding a California county from regulating the usage of firearms in its parks and recreation areas, as the County of San Mateo has opted to do by the challenged ordinance.

Making exactly this point is an earlier case cited by the *Suter* court, *Olsen , supra,* 15 Cal.App.3d 897. In that case, Division Three of this court reversed a decision of the Sonoma County Superior Court which had held that a Petaluma ordinance restricting the rights of parents or guardians to give minors, including their children, guns (including, as in that case, BB-guns) and allowing them to use them was preempted by former Government Code section 9619. In holding that that section—now Government Code section 53071—*did not* preempt the application of the Petaluma ordinance, the *Olsen*

court cited our Supreme Court's holding of two years earlier in *Galvan*, and then stated: "Following *Galvan*, the Legislature in 1969 enacted Government Code section 9619 and made clear its intent 'to occupy the whole field of regulation of the *registration or licensing of . . . firearms. . . .*' Despite the opportunity to include an expression of intent to occupy the entire field of firearms, the legislative intent was *limited* to registration and licensing. We infer from this limitation that the Legislature did not intend to exclude municipalities from enacting further legislation concerning the use of firearms." (*Olsen, supra,* 15 Cal.App.3d at p. 902.)

Again, this statement was made after and because of the enactment of and reliance by the defendants on the predecessor statute to Government Code section 53071. And, significantly, in its decision in *Great Western* our Supreme Court specifically quoted that statement in *Olsen.* (*Great Western, supra,* 27 Cal.4th at pp. 862-863; see also, explicitly so holding, *CRPA, supra,* 66 Cal.App.4th at p. 1313.)

To put the matter simply, the San Mateo ordinance at issue in this case has nothing at all to do with "the registration and licensing of firearms" and hence cannot be considered preempted by Government Code section 53071.

Finally, appellants contend that another San Mateo County ordinance, No. 3.53 enacted in 2002, constitutes an "implied repeal" of Ordinance No. 3.63.080, subdivision (o), quoted above, and last amended in 1998.[19] The 2002 ordinance provides, in its first section: "Every person who brings onto or possesses on County property a firearm, loaded or unloaded, or ammunition for a firearm is guilty of a misdemeanor." (Ord. No. § 3.53.010.) The ordinance then goes on to broadly define "County property" to include 'real property, including any buildings thereon, owned or leased by the County of San Mateo . . . and in the County's possession," but then specifies eight (8) exceptions from that prohibition, including any "person holding a valid license to carry a firearm issued pursuant to Penal Code section 12050 [now section 26150]." (Ord. Nos. § 3.53.020 &

---

[19] Amicus NRA states in its brief that "it takes no position on the issue of implicit repeal."

3.53.030(c).)  This exception should, appellants contend, also apply to Ordinance No. 3.63.080, subsection (o), or be considered an "implied repeal" of the latter ordinance.

We reject this argument for several reasons.  First of all, it was never raised in the trial court, notwithstanding the fact that their complaint was filed almost a decade after Ordinance No. 3.53 was enacted.  "As a general rule, theories not raised in the trial court cannot be asserted for the first time on appeal; appealing parties must adhere to the theory (or theories) on which their cases were tried.  This rule is based on fairness—it would be unfair, both to the trial court and the opposing litigants, to permit a change of theory on appeal; and it also reflects principles of *estoppel* and *waiver*."  (Eisenberg et al., Civil Appeals and Writs (The Rutter Group 2011) ¶ 8:229; see also *Nelson v. Legacy Partners, Inc.* (2012) 207 Cal.App.4th 1115, 1135-1136.)

But even on the merits, this argument has no weight.  The broader prohibition of Ordinance No. 3.53 excepts persons having a valid license to carry firearms, an exception not found in Ordinance No. 3.63.080.  But, as noted above, the latter section deals solely with County parks and recreation areas.  The Board of Supervisors could well have concluded that a stricter standard of gun control is warranted in such areas and, under the law, they are free to enact exceptions or modifications to broader regulations when such is deemed appropriate.  (See, e.g., *Gray v. County of Madera* (2008) 167 Cal.App.4th 1099, 1129-1130; *Sierra Club v. County of Napa* (2004) 121 Cal.App.4th 1490, 1509-1511.)  In the case of state statutes, "a more specific statute controls over a more general one" (*Lake v. Reed* (1997) 16 Cal.4th 448, 464), and a similar rule of law should, clearly, apply to county regulations.

## IV. DISPOSITION

The judgment of dismissal is affirmed.

_____
Haerle, Acting P.J.

We concur:


_____
Lambden, J.


_____
Richman, J.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

CALGUNS FOUNDATION, INC., et al.,

      Plaintiffs and Appellants,

v.

COUNTY OF SAN MATEO,

      Defendant and Respondent.

A136092

(San Mateo County
Super. Ct. No. CIV509185)

BY THE COURT:

      The opinion in the above-entitled matter filed on July 15, 2013, was not certified for publication in the Official Reports.  For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

Dated: _____           _____

                                                              Haerle, Acting P.J.

Trial Court:  Superior Court of San Mateo County

Trial Judge:  Hon. V. Raymond Swope, III


| Attorney for Plaintiffs and Appellants | Donald E. J. Kilmer, Jr.<br>Law Offices of Donald Kilmer, A.P.C. |
| --- | --- |
| Attorneys for Amicus Curiae in support of Plaintiffs and Appellants | C. D. Michel<br>Glenn S. McRoberts<br>Anna M. Barvir<br>Michel & Associates |
| Attorneys for Defendant and Respondent | John C. Beirs, County Counsel<br>David A. Silberman, Deputy |